ANNETTE CROUSE AND CHARLES W. CROUSE, PLAIN-
TIFFS-RESPONDENTS, v. THE STACY-TRENT COMPANY,
DEFENDANT-APPELLANT.

Submitted October 28, 1932—Decided January 31, 1933.

For the appellant, *Katzenbach, Gildea & Rudner.*

For the respondents, *Scammell, Knight & Reese.*

The opinion of the court was delivered by

DONGES, J. The plaintiff, Mrs. Crouse, was a patron of
the defendant in its hotel on October 12th, 1926. She went
into a lavatory on the second floor of the hotel, and, desiring
to use a toilet, which was in a compartment or stall on one
side of the room, entered the compartment through the door-
way thereof, after stepping up to a platform on which two
toilet compartments were located. This platform was five or
six inches above the level of the floor of the lavatory room,
ran along a portion of one side thereof, and began about ten
inches from the outside door of the toilet compartments. As
she was leaving the toilet she fell and was injured. Suit was

instituted by Mrs. Crouse to recover for the injuries so received and by Mr. Crouse for his damage in consequence of such injuries to his wife. Trial was had at the Mercer Circuit, which resulted in verdicts for both plaintiffs. This appeal seeks a review of the judgment entered on such verdicts.

The grounds of appeal raise two points: (1) That the trial court erred in refusing to nonsuit, and to direct a verdict for the defendant; (2) that the trial court committed error in admitting testimony that other women had almost fallen in leaving the toilet in question.

The complaint alleged that the negligence of defendant "consisted of maintaining and permitting to exist on the said hotel premises occupied and controlled by the defendant, The Stacy-Trent Company, an extremely dangerous condition, to wit, a step leading from the said water-closet to the said lavatory, which said step could not be seen, or could not be readily seen by a person going from the said water-closet to the said lavatory; which said dangerous condition arose from the failure of the defendant to maintain proper lights in the said water-closet, or in the said lavatory; from the failure of the defendant to take other proper precautions to warn persons leaving the said water-closet that such a step existed; from the failure of the defendant to post a sufficient warning of the aforesaid dangerous condition, even though the said dangerous condition was known by the defendant to exist; from the maintaining by the defendant of the aforesaid step in a color or shade which was very deceiving and which would make it appear that no such step existed; from the maintaining of the walls of the said lavatory and the floor of said lavatory in a color or shade which would make it impossible for any person leaving the said water-closet to notice the said step; from maintaining a step at a distance from the door of said water-closet at which distance no step would or could be expected to exist, and from omitting to take many other proper precautions in and about the said lavatory and water-closet to secure the safety of the guests of the said hotel."

It was stipulated that there was no change in the design and construction of the step or platform; that it continued in

the same way as originally built when the hotel was erected in 1919 or 1920.

There was testimony that the lavatory was lighted by two electric lights, one in the middle of the room and one over the partition between the toilet stalls and the main room. There was some testimony that the latter light was not burning at the time of the occurrence complained of. There was testimony as to the similarity in appearance of the step or platform and the floor and walls, so that the step was not plainly distinguishable as a step and as a possible danger, particularly if the light over the closets was not lighted. Admittedly, the plaintiff stepped up to enter the closet. As she was leaving, she fell. She does not testify that she fell by stepping from the platform, but the testimony, when read together, is susceptible of the conclusion and reasonably supports a finding that she fell at the step and by reason of its presence. The jury viewed the premises.

In this situation, defendant urges that there was no evidence of negligence on its part to warrant submission to a jury, and that the evidence disclosed such failure on the part of the plaintiff, Mrs. Crouse, to exercise reasonable care for her safety as to require the court to withdraw the case from the jury.

In view of all of the testimony touching the construction, the color of the walls, the failure to light the room so as to apprise a stranger invitee of the existing condition, we conclude that a question of fact requiring submission to the jury was raised, both as to the defendant's negligence and Mrs. Crouse's contributory negligence, and that the motions to nonsuit and to direct a verdict for defendant were properly denied.

The defendant urges that the trial court erred in admitting testimony that other persons had stumbled or been thrown off balance at the same place before and after the accident to Mrs. Crouse.

The trial court admitted the testimony on the authority of *Alcott* v. *Public Service Railway Co.,* 78 *N. J. L.* 482. That case involved an accident arising from a defective "mate" or

tongue of a crossing switch of a street railway. The precise question was whether the switch was out of repair and whether defendant should have discovered the condition and repaired it. That case did not involve a question of improper or dangerous construction. In an opinion by Mr. Justice Parker, it was there held that "evidence of a similar accident at the same place some few days before was proper both as supporting the plaintiff's evidence as to the condition of the switch at the time of his accident, and as tending to show that that condition had persisted so long that with proper care and inspection it should have been remedied before the plaintiff sustained his injury, and that as to the evidence of its similar condition two or three days afterwards, this was justified as corroborative of the plaintiff's testimony relative to that condition."

In the instant case, two questions were involved: (1) that the platform as constructed was dangerous, and (2) that the place was inadequately lighted, so that the step was not readily discernible. As to the second point, obviously evidence of other accidents or near accidents would not be helpful in determining whether the place was adequately lighted when plaintiff was injured. Particularly is this true, because two of the witnesses testified to incidents occurring in one instance about four years before this accident, and the other about three years after this accident.

On the question of proving a dangerous condition by proof of other accidents, we have the case of *Temperance Hall Association of Trenton* v. *Giles,* 33 *N. J. L.* 260, in which Chief Justice Depue, speaking for the Supreme Court, said: "It would not be competent for the party suing, to prove, as tending to show that it was a nuisance, that at other times other persons fell into the excavation." The principle thus enunciated was approved and followed in this court in *Bobbink* v. *Erie Railroad Co.,* 75 *Id.* 913. That case arose out of an accident caused by a horse catching his foot in a frog or cross-over maintained by the railroad company. It did not involve an allegation of disrepair, as in the Alcott case, but of dangerous construction. Mr. Justice Bergen, in passing

upon the propriety of a question as to other similar occurrences, said: "Assuming that it was intended to call for the observation by the witness of similar occurrences, it was properly overruled. The fact that other horses had caught their feet in the frog would not, standing alone, justify the conclusion that the frog was improperly constructed. The admission of such evidence would require the examination and determination, in each case the witness might testify to, of the degree of care exercised by those in charge of the horses injured. Testimony of this character would lead to the trial of issues distinct from those under consideration, and was condemned by Chief Justice Depue in *Temperance Hall Association of Trenton* v. *Giles, supra.*"

Although there is a contrariety of authority in sister jurisdictions upon this subject, it appears to be settled in this state that such evidence is admissible to show that a condition of disrepair in fact existed, and that it existed for such length of time that those responsible for such condition of disrepair should have discovered and rectified it; but such evidence is not admissible to show that a structure as designed is dangerous and likely to produce accidents.

The judgment under review is reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, HEHER, KAYS, HETFIELD, WELLS, KERNEY, JJ. 13.