FRANCES MILLER *v.* POLI'S NEW ENGLAND THEATRES, INC.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued June 6—decided July 12, 1939.

*Morris W. Mendlesohn,* for the appellant (defendant).

*Vincent A. Miller,* with whom, on the brief, was *William F. Jones, Jr.,* for the appellee (plaintiff).

HINMAN, J. The Palace Theatre in Waterbury is owned and operated by the defendant as a moving picture theatre. The floor of the auditorium slants downward toward the stage. In consequence, beginning with the fourteenth row from the stage, twenty-nine rows of seats to the rear rest on platforms elevated above the aisle, the elevations increasing gradually until the platform on which the last row of seats rests is seven and one-half inches above the aisle. In the afternoon of November 27, 1937, the plaintiff and her sister entered as patrons and selected seats in the rear row, the plaintiff occupying the second seat from the aisle. At the time she entered a moving picture was being projected, but there was sufficient light so that she could see that there was no usher near and she chose her own seat. She remained about three hours and a half, and then started to leave while pictures were still being shown. In stepping from the platform to the aisle she missed her footing and fell, striking on her back on the floor of the aisle and was injured. While the complaint includes several specifications of negligence, the record indicates that the element relied on at the trial and upon which the award of damages

was predicated was inadequacy of lighting at the place where the fall occurred.

The finding contains the foregoing facts, also that above the place where the plaintiff fell there was a circular glass ceiling fixture, about four feet in diameter and nine or ten feet from the floor, in which were three circuits of eight twenty-five watt electric lights each, the bulbs of one of these circuits being white, of another blue and of the third red. Before the showing of pictures started the white lamps were lighted but when the showing started they were extinguished and the two colored circuits were lighted, and this was the condition when the plaintiff entered, while she was there, and when she started to leave. Additional light came from a smaller ceiling panel, containing four red and four blue twenty-five watt bulbs, also nine or ten feet from the floor. The light from these overhead lamps shone directly on a white line which was painted at the edge of the platform from which the plaintiff fell. There was also, on the rear wall about fifteen feet distant, a bracket wall fixture containing three twenty-five watt orange-amber lights. The above described lights were diffused lights with the purpose of avoiding interference with vision of the moving pictures. There was more light at this point than at other places further forward in the auditorium and where the plaintiff customarily had sat on former visits to the theatre. The defendant caused inspections of the lights to be made before and during the showing of the pictures.

The floor of the platform was of wood and unpainted except for a strip painted white along the edge next the aisle. The finding states that this strip was one inch wide, but the evidence, especially the photographic exhibits, requires the requested correction that its width was two and one-half to three inches. The

aisle floor was covered by a carpet of red color with a pattern of black and yellow. The trial court found that the painted white line "reflects white only in a white light; it did not reflect white in red and blue beams from the ceiling panels." The defendant truly claims that this finding is without support in the evidence. The only direct evidence to the point was on behalf of the defendant to the effect that the reflected lights "made the white surface at the edge of the platform stand out vividly." Granted that this evidence might not be credited, there was no evidence to the contrary and it is apparent that in finding this fact the trial court resorted to judicial notice. However, we cannot agree that this is a matter of such "common and general knowledge" and "authoritatively settled" beyond doubt or uncertainty as to be a proper subject therefor. 20 Am. Jur., p. 48; *Dejon* v. *Smedley Co.*, 108 Conn. 659, 670, 144 Atl. 473. Therefore this finding cannot stand. The finding that the plaintiff "was unable to observe the difference in levels of the platform and the aisle" is stronger than the evidence justifies. It is found that she became aware of the existence of the platform when she stepped up to reach her seat. A finding that she "did not observe" or that she "did not recall or note" the difference in levels when she was leaving is the most that is warranted. Indeed, it would seem reasonable that as when she entered from daylight the lighting was sufficient to enable her to find her seat unaided and to see and step up on the platform, the same lighting would have enabled her to see even better when leaving. *Givens* v. *De Soto Bldg. Co.*, 156 La. 377, 381, 100 So. 534. Further claimed corrections of the finding as to facts pertaining to the conduct of the plaintiff bearing upon the question of contributory negligence cannot be made to such an extent as to remove that issue from

one of fact. *Knapp* v. *Connecticut Theatrical Corp.*, 122 Conn. 413, 418, 190 Atl. 291.

One of the conclusions stated that "it is the duty of the defendant to make the theatre reasonably safe for its patrons." This and other indicia afforded by the record signify that the trial court applied too strict a rule of duty to the defendant. One operating a theatre is not an insurer of the absolute safety of its patrons; the duty assumed is to use reasonable care in the construction, equipment and management of it, having regard to the character of the entertainment given and the customary conduct of the persons attending. *Glynn* v. *Lyceum Theatre Co.*, 87 Conn. 237, 241, 87 Atl. 796; *Knapp* v. *Connecticut Theatrical Corp.*, supra, 416; *Seabridge* v. *Poli*, 98 Conn. 297, 300, 119 Atl. 214; *Haugh* v. *Harris Brothers Amusement Co.*, 315 Pa. St. 90, 92, 172 Atl. 145; *Rosston* v. *Sullivan*, 278 Mass. 31, 35, 179 Atl. 173; *Rynn* v. *Fox New England Theatres, Inc.* (Mass.) 12 N. E. (2d) 728; *Andre* v. *Mertens*, 88 N. J. L. 626, 628, 96 Atl. 893; *Falk* v. *Stanley Fabian Corp.*, 115 N. J. L. 141, 178 Atl. 740; *New Theatre Co.* v. *Hartlove*, 123 Md. 78, 82, 90 Atl. 990; *Dire* v. *Balaban and Katz, Inc.*, 241 Ill. App. 199, 203; *Espel* v. *Cincinnati Walnut Theater Amusement Co.*, 20 Ohio App. 470, 152 N. E. 684; 26 R. C. L. 714; Notes, 98 A. L. R. 577, 53 A. L. R. 863, 22 A. L. R. 670. A moving picture theatre necessarily operates in partial darkness while pictures are being shown; to provide too much light would spoil the entertainment for patrons. On the other hand, there is to be considered the customary entering and leaving by patrons during the showing of a picture and the dangers to them of too great darkness. Therefore, as pointed out in *Falk* v. *Stanley Fabian Corp.*, supra, 143, the degree of illumination consonant with reasonable care "must be something of a compromise between two opposing

objectives—successful showing of the picture, which calls for darkness, and the safety of those for whom the entertainment is provided, which calls for light." The criterion adopted in *Rosston* v. *Sullivan, supra*, 35, and followed in the *Falk* case, is that the theatre operator's duty is satisfied "if the condition of light was that ordinarily used in exhibiting moving pictures to enable the audience to get a reasonably clear view of the image thrown on the screen." See also *Smith* v. *Penn Federal Corp.*, 315 Pa. St. 20, 23, 172 Atl. 147; *Peck* v. *Yale Amusement Co.* (Mo.) 195 S. W. 1033. Under the general rule of duty the issue is not to be decided solely upon the degree of visibility afforded an individual patron, as an isolated fact, without regard to the necessities arising from the nature of the entertainment, and as to these prevailing practice appears to afford a logical standard or test. In the instant case it appears that the rule applied imposed upon the defendant an absolute duty to make its theatre reasonably safe, instead of using reasonable care to that end, having regard to the nature of the entertainment and the necessities thereof.

There is error and a new trial is ordered.

In this opinion the other judges concurred.