KATHERINE FALSO *v.* POLI-NEW ENGLAND THEATRES, INC.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued October 9—decided December 5, 1940.

*Joseph F. Berry* and *Morris W. Mendlesohn,* for the appellant (defendant).

*Edward H. Smith,* for the appellee (plaintiff).

BROWN, J. The Palace Theatre in Hartford is operated by the defendant as a moving picture theater.

An entrance tunnel leads into a longitudinal aisle which divides the balcony into two parts. The plaintiff sustained her injuries on a stairway or aisle leading down on a grade of plus twenty-eight degrees from the longitudinal aisle to the lodge section in the front part of the balcony. This stairway aisle was thirty-seven inches wide and consisted of nine steps. The width of the tread of the first or top step was ten and five-eighths inches, of the second twenty, of the third ten and three-quarters and of the fourth nineteen and one-half. The height of the first riser, which surmounted the first tread, was eight and one-half inches, of the second riser eight, of the third eight, and of the fourth eight and one-half. The wider treads formed the level used by patrons in passing into the seats. There was an orange amber light in the ceiling over the longitudinal aisle at a point south of the stairway aisle, an aisle light on the end seat at the left opposite the first tread, another on the end seat at the right opposite the fifth tread, and another on the end seat at the left opposite the ninth tread. There were four diagonal louvers on each aisle light and the light from each extended directly on the carpet of the aisle and spread a little. These four lights were lighted, and aside from the light reflected from the screen where a picture was being shown, afforded the only light on this stairway aisle. Readings of the amount of light at various points thereon were made by an electric cell photometer. Wherever it failed to register, it indicated that the degree of light at that point was "less than one-tenth of a foot candle," that is, less than one-tenth of the light given by a one candle power light located one foot therefrom. As shown by these readings, there was less than one-tenth of a foot candle of light beyond the central point of any stair, the light on one-third of the stairway within the arcs of the

lights reflected was greater than one-tenth of a foot candle averaging one-fourth foot candle, and the light on the remaining two-thirds, which included the entire third tread, was less than one-tenth of a foot candle. The stairway was covered with a wine colored carpet which absorbed about 80 and reflected about 20 per cent of the light falling upon it.

The plaintiff purchased a ticket for a seat in the balcony, and after passing through the entrance tunnel, stood for a minute or two beside an usher who had a flash light and who informed her that there were seats available in the right lower section of the balcony. It was his duty to assist in the right-hand side of the theater only. He was not occupied but made no effort to assist her and was not requested to show her a seat. The plaintiff was wearing a type of shoe to which she was accustomed and proceeded down the stairway watching where she was going and looking down at her feet. As she descended she felt the first and second steps "pretty good," but could not see the third tread or step, and as she put her foot down she did not feel anything except her heel touched, and not finding, as she expected, a tread of the size of the one on which she stood, she plunged forward sustaining injuries. The light was not sufficient in the vicinity of the third stair to illuminate existing conditions or to enable the plaintiff to see the tread and the hazardous condition existing therein.

These, the facts material to the court's decision, are established by the finding as modified by the only corrections to which the defendant is entitled. The court concluded that the defendant had failed to employ reasonable care for the safety of the plaintiff, a patron, in that it neglected to provide proper lighting for these steps, and rendered judgment in her favor. Whether the court was warranted in concluding that

the defendant was negligent is the question determinative of this appeal. The defendant's principal contention as summarized in its brief is that there was "no competent evidence upon which to predicate a finding of non-compliance with or deviation from standard practice." As authority that the defendant's conduct must be tested by this practice, it relies upon a recent decision of this court in a case where, as here, the plaintiff sustained injuries by a fall in a moving picture theater during the showing of a picture, where we said: ". . . the duty assumed [by the defendant] is to use reasonable care in the construction, equipment and management of it [its theater], having regard to the character of the entertainment given and the customary conduct of the persons attending. . . . A moving picture theater necessarily operates in partial darkness while pictures are being shown; to provide too much light would spoil the entertainment for patrons. On the other hand, there is to be considered the customary entering and leaving by patrons during the showing of a picture and the dangers to them of too great darkness. Therefore, . . . the degree of illumination consonant with reasonable care 'must be something of a compromise between two opposing objectives—successful showing of the picture, which calls for darkness, and the safety of those for whom the entertainment is provided, which calls for light.' The criterion . . . is that the theater operator's duty is satisfied 'if the condition of light was that ordinarily used in exhibiting moving pictures to enable the audience to get a reasonably clear view of the image thrown on the screen.' . . . Under the general rule of duty the issue is not to be decided solely upon the degree of visibility afforded an individual patron, as an isolated fact, without regard to the necessities arising from the nature of the entertainment, and as

to these prevailing practice appears to afford a logical standard or test." *Miller* v. *Poli's New England Theatres, Inc.*, 125 Conn. 610, 614, 7 Atl. (2d) 845.

This statement makes clear that by reason of the very nature of the business in which the defendant is engaged, the question of the proper degree of light to enable patrons to make their way to and from their seats, must be balanced against the proper degree of darkness to permit them to see the pictures shown. As stated in the *Miller* case the prevailing practice affords a logical standard or test for the determination of this question, and as pointed out by the defendant, the finding is silent as to what that prevailing practice is. That test is not exclusive, however, and there are other facts found disclosing a structural condition which, left in total darkness with nothing to safeguard patrons therefrom, was dangerous. These required the court's conclusion that the defendant was negligent. This being so, the elimination from the finding of the fact that the lighting condition at the point in question "should" have been such that the stairway would "not reflect less than two-tenths or one-fifth candle power," to which the defendant is entitled as a correction, does not invalidate this conclusion. The court's finding that a hazardous condition existed at this step is supported by the undisputed fact of the great diversity in the widths of the treads, and by the direct testimony of the plaintiff's expert to the effect that the situation there as it existed was hazardous and dangerous. The finding that on the entire third tread the light was less than one-tenth of a foot candle, and that 80 per cent of this was absorbed by the carpet, establishes that at no place thereon did the light exceed 2 per cent of a foot candle. To all practical intents and purposes this was no light, and as indicated by the finding, rendered it impossible for the

plaintiff to see the tread at all or to discover the hazard in its construction. This, therefore, is not a case where the defendant's negligence or lack of it depends upon the determination whether the amount of light provided at this point was sufficient, as balanced against the restriction thereof essential to the projection of the picture. It is rather a case where its negligence depends upon failure to provide any light at all or other safeguard against this known danger in the aisle which it invited the plaintiff to use. Under such circumstances the test of that care which an ordinary reasonably prudent man would exercise under the circumstances is adequate without resort to that of the standard practice urged by the defendant. Applying this test to the facts found we are unable to find error in the conclusion of the trial court that the defendant was negligent.

Whether the court's statement in its conclusions that the defendant was charged with knowledge of the natural instinct of patrons to glance at the screen, was erroneous, it is not necessary to consider, since the finding is that this plaintiff did not so glance. The defendant claims that the court erred in its further conclusion that its duty to exercise reasonable care for the plaintiff's safety, required that it provide an escort by usher and flashlight so far as it was feasible under the circumstances to do so. Whether or not this is a correct general statement of the law as to a theater owner's duty we need not determine. This conclusion of the court was warranted upon the facts which it found. These were that the defendant, charged with knowledge that the step was dangerous and in complete darkness, by its usher directed the plaintiff to proceed over it, and yet failed to use a flashlight to illumine the place of danger. This could properly be found a breach of the defendant's duty under the circum-

stances, and the court did not err in so holding. The court was warranted in concluding that the negligence of the defendant, and not contributory negligence by the plaintiff, was the proximate cause of her fall and injuries.

The court permitted the plaintiff over the defendant's objection to ask the lighting engineer produced by her as a witness, after he had testified to taking the photometer readings already referred to, whether basing his opinion on those readings and on the lights being shown during the projection of the picture, he would say the stairs were adequately lighted, to which he replied in the negative. The defendant claims that the court should have excluded the question because it failed to restrict the witness to an opinion predicated upon the standard of the practice prevailing in other moving picture theaters when a pitcure is being shown. The significant issue for determination was the condition of light at the third step where the plaintiff fell. Since the photometer readings in evidence had already established that there was no light at this step, even though the court erred in allowing this question, which elicited the characterization of the average light on the stairs there as "inadequate," the error was harmless.

There is no error.

In this opinion the other judges concurred.