No. 15,279.

Fox Greater Theatres, Inc. *v.* Labriola.

(134 P. [2d] 214)

Decided February 1, 1943.   Rehearing denied February 23, 1943.

Messrs. WOLVINGTON & WORMWOOD, for plaintiff in error.

Mr. HARRY G. SAUNDERS, Mr. JOE D. NEFF, for defendant in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appeared in reverse order below and are hereinafter referred to as there, or as the company and Ann, respectively. The company operates the Tabor .Theater in Denver. Ann, as a paying patron, attended an evening picture show there. On leaving she fell through a side door and was injured. Charging the company with negligence she sued for damages. It denied liability and alleged contributory negligence. A jury was waived and trial had to the court. To review a judgment entered for Ann the company prosecutes this writ and asks that it be made a supersedeas. Two specifications are relied upon. They raise the simple question of the sufficiency of the evidence. We elect to finally dispose of the cause.

■■■■ The company says it is not an insurer of the safety of its patrons, citing cases. It also cites a number of authorities on various phases of the case. The law announced therein is undisputed. Among these is *Crawford v. Pacific States S. & L. Co.,* 22 Cal. App. (2d) 448, 71 P. (2d) 333. Counsel for plaintiff say it was the company's duty to have the theater in safe condition and give warning of concealed perils, citing the Crawford case, supra. Counsel for plaintiff cite no other authorities, nor need they. No rule of law relied upon by either litigant can be seriously controverted. No material fact is in dispute and the sole question is, Do the company's admitted acts or omissions constitute negligence and the proximate cause of plaintiff's injuries?

At the time of the trial plaintiff was thirty years old. In infancy she had an attack of infantile paralysis which left her permanently afflicted. Her legs were partially paralyzed, she had marked curvature of the spine, and she walked with a cane upon which she leaned heavily. Her schooling closed when at the age of twenty she completed the ninth grade.

The Tabor Theater, like most such places, had certain side or "emergency" doors not generally used as exits, but which could be so used. These were so fastened as not to serve as entrances. One of them, a "double door," was located approximately one-fourth of the distance from the rear toward the stage on the right-hand aisle. It opened on several cement steps leading down to an alley. From the edge of the aisle outward there was a slight downward slope. Above this door in large letters was the word "Exit." At the time of the accident the door was covered by heavy drapes whose only purpose was ornamentation. The fastening was what is known as a "panic bolt," i. e., across the left of the two sections, less than half way up from the floor, ran a horizontal bar. From this to top and bottom extended connecting bars. When closed these fitted about half an inch into the frame at the top and the floor at the bottom, thus securing the doors. Inside pressure on the horizontal bar would withdraw the fastening permitting the doors to be pushed open outward.

Plaintiff was well acquainted with the Tabor Theater, attending "shows" there almost weekly. She never went alone. On December 2, 1941, accompanied by her cousin, Cecilia Labriola, she was there from early evening until 10 p. m. At that hour the two prepared to depart. They had been occupying seats on the aisle opposite the door above described, Ann sitting on the outside. They stood in the aisle, alone, while Cecilia put on her coat, Ann facing her, back to the door. On the stand she said, "I told her I would stand there while she was putting her coat on so as we was walking she wouldn't fool with her

coat and I would fall. So as I was standing there I just fell out of the doors, through a double door. * * * I never did go out that way, * * *. After the drawings [which took place about 8:30 p. m.] some folks went out that way." She further testified that she had seen the "Exit" sign above the door and that she did not know what caused her to fall. Thus falling and striking the cement steps outside the door she received the injuries complained of. There is also evidence that the assistant manager, in talking with the group after plaintiff had been picked up, said in substance that the doors should have been locked. However it is undisputed that there was no way to lock the doors save by the "panic bolt" above described, and if there had been or they had been locked the purpose of the bolt would have been defeated.

The Municipal Code of Denver requires all such assembly rooms as the Tabor Theater to have doors such as that described, opening outward, "not fastened against exit or so the same cannot be easily opened from within;" and which "shall have approved panic bolts on all doors leading from same."

The alleged negligence of the company is that it allowed the said door "to be open or insecurely fastened." That "said exit door was a menace to the public and to this plaintiff in that said door was wholly concealed by reason of heavy curtains hung over same and that no sign or notice was printed upon said curtains advising the public or this plaintiff that said exit door was there."

That the company "neglected to provide any warning, usher, or other attendant to notify plaintiff said door was there or that there were cement steps leading thereto, and the aforesaid aisle, door and steps were inadequately lighted."

"The defendants then and there failed to use reasonable care to protect plaintiff from being pushed or from

losing her balance and falling while attempting to negotiate a safe passage along defendant's aisle."

There is no evidence of inadequate lighting, or that the door in question was not properly fastened, or that it was a menace to anyone. Plaintiff saw the sign above it and during the evening had seen people going out that way. The exit sign was a sufficient warning. No attendant was necessary. Plaintiff was not pushed. She was not trying to negotiate a safe passage along the aisle. On her own testimony she was standing perfectly still and fell backwards. The doors could not have been secured otherwise than they were without a violation of the city ordinance. What caused plaintiff to fall is unknown, so far as the record discloses, but from the foregoing we do know that there was nothing negligently done or omitted by the company. Beyond that we need not and cannot go. At the close of plaintiff's evidence defendant moved for a nonsuit. That motion was denied. It should have been granted.

The judgment is reversed and the cause remanded with directions to dismiss at plaintiff's costs.

Mr. Chief Justice Young, Mr. Justice Bakke and Mr. Justice Jackson concur.