16 So.2d 444

CASSANOVA v. PARAMOUNT–RICHARDS
THEATRES, Inc., et al.

No. 37048.

Dec. 13, 1943.

Rehearing Denied Jan. 3, 1944.

Cabral, Courtin, Muller & Herman, of New Orleans, for plaintiff.

Rosen, Kammer, Wolff, Hopkins & Burke, of New Orleans, for defendants.

FOURNET, Justice.

The plaintiff, Mrs. John Cassanova, instituted this suit against the Saenger Theatre and its insurer, the American Mutual Liability Insurance Company, to recover from them, in solido, damages in the amount of $25,000, for injuries sustained by her while she was descending the aisle-stairway in the

theatre's balcony on her way out after viewing the picture when her right foot went into a space between the end standard of the seats in row "D" and the edge or end of the step, which space, because of defective lighting and construction, she claims constitutes a "foot trap."

In their answer the defendants, for lack of sufficient knowledge, denied that the accident had occurred as alleged by the plaintiff and, since no report was made to any of the theatre's employees on the night in question, infer that the accident did not, in fact, occur in the theatre. Further answering the defendants averred that the entire theatre, including the lighting system, was designed by an experienced architect, and denied that anything in the design, construction, or lighting of the theatre was defective or improper, their special defense being that the thousands of patrons who had used these same aisle-stairways since the theatre's construction without harm was proof that the stairway and the seating arrangement in the balcony was safe. In the alternative they pleaded the contributory negligence of the plaintiff.

On the issues as thus made up the trial judge concluded that the open space between the end of the row of seats and the edge of the step constituted a hazard and that the operators of the theatre were negligent in not closing it up so that the stairway would be safe for its patrons, being of the opinion that because of the darkness of the theatre the plaintiff could not have been aware of the danger lying in this open space, which he characterized as a "trap," and, consequently, was not at fault, for "she had

a legal right to presume that (the) stairway was safe and free from hazard of this nature and character." He rendered judgment in favor of the plaintiff and against the defendants, in solido, in the sum of $6,000.

The Court of Appeal for the Parish of Orleans readily concluded that the plaintiff was injured in the theatre on the night in question but reversed the judgment of the district court and dismissed the plaintiff's suit, primarily because the theatre had been constructed by an experienced architect of recognized ability who testified the design, construction, and lighting system used in the balcony was in accordance with the standard used in the theatres of the same size and type, and because the manager of the theatre testified that during the fifteen years since its construction no complaint had ever been made of a similar accident, the court's conclusion being that any defect in the construction of the aisle-stairway or the lighting system, if such existed, "does not present a danger sufficiently apparent to justify the conclusion that it is negligence to fail to eliminate it," commenting that while it is possible for the foot of a patron to get into this space, "such an occurrence can only take place under most unusual circumstances."

The evidence of the lack of accidents similar to the one plaintiff is complaining of, which so greatly impressed the Court of Appeal and upon which it rested its decision to a large extent, was objected to by counsel for the plaintiff on the ground that it had no relevancy in so far as the plaintiff's accident was concerned, but the court allowed the tes-

timony in the record for whatever effect it might have.

Almost all courts admit evidence of prior accidents for the purpose of charging the owners or managers of buildings and premises with notice of defects or physical conditions which are dangerous (Park Circuit & Realty Co. v. Coulter, 233 Ky. 1, 24 S.W.2d 942; Galveston Theatres v. Larsen, Tex.Civ.App., 124 S.W.2d 936; Linneen v. City of Chicago, 310 Ill.App. 274, 34 N.E. 2d 100; District of Columbia v. Arms, 107 U.S. 519, 2 S.Ct. 840, 27 L.Ed. 618; Small v. Pennsylvania R. Co., 65 App.D.C. 112, 80 F.2d 704; 45 C.J. 1246, §§ 810, 811, and 813; and the annotation at 128 A.L.R. 595), but, "Whether it is competent in a negligence action to show that other injuries have not occurred is a question upon which the courts are disagreed. According to the rule laid down by many (and apparently the majority) courts, the absence of other accidents at the place of an alleged defect is not admissible for the reason that such evidence not only raises collateral issues, but has no reasonable tendency to prove that such place of injury was free from danger. (Nave v. Flack, 90 Ind. 205, 46 Am.Rep. 205; Branch v. Libbey, 78 Me. 321, 5 A. 71, 57 Am.Rep. 810; Anderson v. Taft, 20 R.I. 362, 39 A. 191; Fox Tucson Theatres Corp. v. Lindsay [47 Ariz. 388], 56 P.2d [183], 185; Crouse v. Stacy-Trent Co. [110 N.J.L. 124], 164 A. 294; Bobbink v. Erie R. Co., 75 N.J. L. 913, 69 A. 204; Carty v. Boeseke-Dawe Co., 2 Cal.App. 646, 84 P. 267; Mobile & O. R. Co. v. Vallowe, 214 Ill. 124, 73 N.E. 416; Temprance Hall Ass'n v. Giles, 33 N.J.L. 260; Park Circuit & Realty Co. v.

Coulter [233 Ky. 1], 24 S.W.2d 942; Jenson v. S. H. Kress & Co., 87 Utah 434, 49 P. 2d 958; Lucia v. Meech, 68 Vt. 175, 34 A. 695.) Others take the position that the fact of freedom from prior accidents tends to show reasonable safety or reasonable care in a sufficient degree to warrant admissibility of that fact in evidence, although it is by no means conclusive." 38 Am.Jur. 1014, Section 315. (Parentheses ours.)

Our attention has not been called to any case where the admissibility of such evidence has ever been squarely presented to and passed upon by this court. While the court in the case of Givens v. De Soto Building Co., 156 La. 377, 100 So. 534, 536, relied on by the defendants, did apparently take such evidence into consideration and during the course of the opinion say that it had been shown "that many thousands of persons have entered and left this theater without another person having suffered a fall. Things were therefore apparently safe," no objection had been raised to the admissibility of such evidence and the question of its admissibility was not otherwise urged in the case. The issues presented for the court's decision in the Givens case were whether the placing of seats on a platform elevated about eight inches above the aisle in the balcony constituted faulty construction and whether the lights furnished by the operators were insufficient for the plaintiff to see this change in floor levels, and the court squarely held that the complained of construction was not defective per se and that there was sufficient light to apprize the plaintiff of the elevation of this platform above the aisle level, concluding that they could "see no reasons why she should not have seen the step-down where she fell, had she been looking at the time."

We think the better rule is that such testimony should not be admitted. Once the defendant is permitted to put in such testimony, the plaintiff is necessarily entitled to rebut the same by showing, if such evidence is procurable (which is unlikely since, of course, such evidence is almost wholly within the knowledge of the defendant), that such previous accidents did occur. This can but lead to complications and the raising of numerous collateral issues, for the defendant would next desire to show that such previous accident had been due to the negligence or want of care on the part of the injured person and not to the defective condition complained of and the plaintiff would then seek to rebut such testimony, ad infinitum. As was very aptly pointed out in the case of Anderson v. Taft, 20 R.I. 362, 39 A. 191, 192: "Apart from the consideration that other accidents would be res inter alios acta to the plaintiff, it is apparent that such testimony, could the parties be prepared to meet it, might introduce into the case numerous collateral issues bearing only remotely on the main issue, which would tend to greatly protract the trial, distract the attention of the jury from the issues involved in the suit, and impose great and unnecessary expense on the parties." See, also, the other authorities cited above in support of the majority view.

Although the proprietors of places of amusement that are operated for profit are not generally considered to be insurers

of the safety of their patrons (Miller v. Poli's New England Theatres, 125 Conn. 610, 7 A.2d 845; Olsen v. John Hamrick's Tacoma Theatres, 9 Wash.2d 380, 115 P.2d .718; Haugh v. Harris Bros. Amusement Co., 315 Pa. 90, 172 A. 145; Givens v. De Soto Bldg. Co., 156 La. 377, 100 So. 534; Fox Greater Theatres v. Labriola, 110 Colo. .329, 134 P.2d 214; Dahna v. Clay County Fair Ass'n, Iowa, 6. N.W.2d 843; Hickey v. Fox-Ozark Theatres Corp., 156 Kan. 137, 131 P.2d 671; and Hudson v. Kansas City Baseball Club, 349 Mo. 1215, 164 S.W.2d 318, 142 A.L.R. 858), they are, nevertheless, charged with the same duty imposed upon the owners or occupants of a building or premise who either directly or impliedly invite or induce others to enter therein, that is, the affirmative duty to use reasonable and ordinary care to keep such building or premise in such a safe condition that the invitees will not be unnecessarily exposed to danger (La Sell v. Tri-States Theatre Corp., Iowa, 11 N.W.2d 36; Bergstresser v. Minnesota Amusement Co., S.D., 5 N.W.2d 49, 143 A.L.R. 53; Olsen v. John Hamrick's Tacoma Theatres, 9 Wash.2d 380, 115 P.2d 718; and the long list of authorities contained in each case, as well as the annotations to be found in 22 A.L.R. 616, 670; 29 A.L.R. 29, 33; 98 A.L.R. 557, 577; 26 R.C.L. 713, Sections 14 and 15; 38 Cyc. 268; Law of the Stage, Screen & Radio, 302, Section 145; The Law of Motion Pictures and The Theatre 299, Section 92; 2 Restatement of the Law of Torts, Sections 342, 343), and to give warning of any dangers that may be hidden or not reasonably observable in the exercise of ordi-

nary care by the invitee. La Sell v. Tri-States Theatre Corp., Iowa, 11 N.W.2d 36; McCartan v. Park Butte Theater Co., 103 Mont. 342, 62 P.2d 338; Montague v. Hansen, 38 Mont. 376, 383, 99 P. 1063, 1065; 26 R.C.L. 713, Section 14; Restatement of the Law of Torts, Sections 342 and 343; 20 R.C.L. 55, Section 51; and 3 Cooley on Torts, 4th Edition, Section 440.

■ The authorities are in conflict as to what constitutes reasonable and ordinary care on the part of proprietors of places of public amusement, but we think the authorities holding that, because of the darkened theatres, moving picture exhibitors are held to a stricter account in the performance of this rule express the sounder logic and the better view, for such a rule has the added weight of common sense behind it. Branch v. Klatt, 165 Mich. 666, 131 N.W. 107; La Sell v. Tri-States Theatre Corp., Iowa, 11 N.W.2d 36; Emery v. Midwest Amusement & Realty Co., 125 Neb. 54, 248 N.W. 804; Magruder v. Columbia Amusement Co., 218 Ky. 761, 292 S.W. 341; Rutherford v. Academy of Music, 85 Pa.Super. 355; Coleman v. Washington Theatre Co., 294 Mich. 343, 293 N.W. 674; Standard Theaters Corp. v. Hughes, 185 Okl. 377, 91 P.2d 1058; and Haugh v. Harris Bros. Amusement Co., 315 Pa. 90, 172 A. 145. As was very aptly stated in the Klatt case [165 Mich. 666, 131 N.W. 109]: "One would have a right to presume that the defendant had discharged his duty of having the premises in a reasonably safe condition, as to lights and construction; and the ordinary person would naturally suppose that it would

be safe to pass along a passageway provided for his exit with reasonable assurance of its being in safe condition. *The very fact of the premises being maintained in a darkened condition might give him [the invitee] added assurance of its being reasonably safe."* (Italics and brackets ours.)

The Saenger Theatre was designed by and constructed in 1927 under the supervision of Emile Weil, one of the well-known architects of New Orleans, who, prior to drawing up his plans, visited many of the leading theatres in the nation. With the exception of the seats, it is built entirely of concrete and steel. The balcony, where the accident occurred, contains slightly more than 1,300 seats that are placed in rows or tiers extending the width of the theatre, each being about twelve inches higher than the one in front, with the result that the back of the balcony is a great deal higher than the front. Because of the distance between these tiers, an intermediate step has been placed between them in the aisle-stairways that are negotiated in reaching the varying levels, but because this intermediate step does not extend to the seat standards, an open space dropping abruptly from the intermediate step to the level of the tier on which the seats are located—some five or six inches below—exists between the ends of the intermediate steps and the standards of the seats. This space varies from 2½ inches at the back to 3¾ inches at the front, because of the curvature of the seating arrangement, and the arms of the seats, some eighteen or twenty inches higher than

the top of the intermediate steps, extend partially over this space.

On the night in question the plaintiff, who had been accompanied to the theatre by her son and daughter-in-law, left her seat in row "F" and, while endeavoring to descend the aisle-stairway adjacent thereto, attempted to put her right foot on the intermediate step that was adjacent to row "D" but caught it in the space between the intermediate step and the standard of the end seat in row "D" and fell into a sitting position, with her left foot under a seat in row "C". As a result she sustained a fracture of both bones of her left ankle joint commonly known as "Pott's Fracture."

As previously pointed out, the Court of Appeal was of the opinion that this space was not dangerous, principally, if not entirely, because the theatre was of standard design and constructed by an eminent architect, and its safe aspect accentuated by the fact that no similar accident had happened during the years since its construction. The court also concluded that the lighting on the aisle-stairway was standard and sufficient, although it did point out in the opinion [11 So.2d 238, 241] that "the evidence as to whether in that part of the theatre [where the accident occurred] the lighting was adequate is quite conflicting." (Brackets ours.)

The evidence shows that the step construction complained of by the plaintiff is not to be found in any of the other large theatres of this city where moving pictures are exhibited. Besides, Mr. Weil

stated that the spaces between these intermediate steps and the seat standards could have been covered at a nominal cost and the aisle-stairways thus made safer for the patrons.

■ The fact that the lighting and construction of this building is in accordance with standard and custom "is merely evidentiary and is not conclusive of the question of ordinary care. The standard of care is ordinary care under the circumstances, and not what others have done under like circumstances." La Sell v. Tri-States Theatre Corporation, Iowa, 11 N.W.2d 36, 44. Justice Holmes, in the case of Texas & P. R. Co. v. Behymer, 189 U.S. 468, 23 S.Ct. 622, 623, 47 L.Ed. 905, has stated the rule in the following terse language: "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." As Wigmore says in his authoritative work on Evidence in discussing evidence of customary conduct and standard methods, *"The proper method is to receive it, with an express caution that it is merely evidential and is not to serve as a legal standard."* 2 Evidence, Third Edition, Section 461. Other similar expressions, such as the following from the case of Farris v. Interstate Circuit, 5 Cir., 116 F.2d 409, 411: "If it be conceded that the theatre was constructed after a universal custom and long-followed design, it does not necessarily follow that such care was taken as reasonable prudence would require," might

be quoted here. See Worcester v. Pure Torpedo Co., 7 Cir., 127 F.2d 945; Walgreen Texas Co. v. Shivers, Tex.Civ.App., 131 S.W.2d 650; Wabash R. Co. v. McDaniels, 107 U.S. 454, 2 S.Ct. 932, 27 L.Ed. 605; The T. J. Hooper, 2 Cir., 60 F.2d 737; and Columbia Amusement Co. v. Rye, 288 Ky. 179, 155 S.W.2d 727. But the courts themselves must ultimately say what is required in each individual case, for some precautions are so imperative that even their universal disregard will not excuse their omission.

To prove the inadequacy of the lighting on the aisle-stairway where she fell, the plaintiff produced two experts. One of them, Mario G. Zervigon, a graduate of the School of Electrical Engineering at the University of Tennessee and at present a professor at Tulane University, was formerly employed by the General Electric Company for the purpose of making tests in illumination. During the course of that employment he made the tests of the lighting control equipment that went into the Radio City Music Hall in New York City. In his testimony he described in detail the exhaustive tests he made of the lighting along these aisle-stairways in the balcony of the Saenger Theatre using the most modern light meter obtainable and he stated that this lighting was not only very deficient, but it was likewise below what the General Electric Company and Buehl, a professor of Electrical Engineering at the University of Illinois, in his work "Electric Illumination," recommend as standard. In fact, he said the lighting at

the place where the accident occurred "was between eighty. and ninety per cent short of the generally recommended value."

Plaintiff's other expert, Gordon Frick, a graduate of the Neville College of Hamburg, Germany, who has also had training at an accredited technical college of Heidelberg and Strelitz, as well as post graduate work at City College in New York and New York University, where he specialized in municipal technology, which deals with municipal engineering and building structures, stated, during the course of his testimony, that he went to the scene of the accident with his photo-meter "and the light was so weak it didn't even register."

To contradict the evidence of these two experts, the defendant offered the testimony of Mr. Weil, the architect who designed the building and who is now retired, who admitted that he had not visited the balcony of the theatre in recent years but stated that the equipment, including the *standard* requirement of such structures, and that of N. L. Carter, employed in the theatre business since 1909 and Secretary of the Paramount Richards, Inc., one of the defendants, since before the Saenger Theatre was constructed in 1927, who testified that his company operates more than fifty theatres and that the lighting system in all of these theatres is in accordance with *standard* requirements.

█ Whether the lighting in this theatre is standard or not is immaterial in this case for the testimony of all of the witnesses, including those of the defendants, is to

the effect that the lights placed in the aisle-stairways in the balcony of the theatre were not so designed as to throw a light on or direct the attention of the plaintiff to the existence of the open space that caused her accident. The evidence shows that such lights as were on these stairways were there merely for the purpose of directing the patrons of the theatre in ascending and descending the stairways and, according to the testimony of the experts, are on the sides of the seats, staggered every fourth row, with the result that while they throw a certain amount of light downward and across to the other side of the aisle-stairways, they throw no light whatsoever on these open spaces. See, Falso v. Poli-New England Theatres, 127 Conn. 367, 17 A.2d 5.

█ It is both general and common knowledge that motion picture houses must, of necessity, operate in partial darkness, it being impossible to show a picture in a flood of diffused light. It is also equally well known that complete and absolute darkness endangers the entrance and exit of the patrons during the showing of a picture. Experts in the field of illumination have endeavored to arrive at the line that marks the happy medium between these two extremes in their effort to ascertain just what amount of light allows an enjoyable showing of the picture and yet does not constitute a hazard. See, Vale v. Indiana County Theaters Co., 3 Cir., 120 F.2d 495; Olsen v. Edgerly, 106 Ind.App. 223, 18 N.E.2d 937; Falso v. Poli-New England Theatres, Inc., 127 Conn. 367, 17 A.2d 5; Falk v. Stanley Fabian Corp., 115

N.J.L. 141, 178 A. 740; Columbia Amusement Co. v. Rye, 288 Ky. 179, 155 S.W.2d 727; Miller v. Poli's New England Theatres, 125 Conn. 610, 7 A.2d 845; Olsen v. John Hamrick's Tacoma Theatres, 9 Wash.2d 380, 115 P.2d 718; Bergstresser v. Minnesota Amusement Co., S.D., 5 N.W. 2d 49, 143 A.L.R. 53; and Fox Tucson Theatres Corp. v. Lindsay, 47 Ariz. 388, 56 P.2d 183. However, as was stated in the case of La Sell v. Tri-States Theatre Corporation, Iowa, 11 N.W.2d 36, 49: "When one goes into a hazardous business—and it must be conceded that a darkened theater has its hazards—he must take that into consideration, and assume the burdens, and take the precautions which a reasonably and ordinarily prudent person would use under all of the circumstances. *The fact that partial darkness is essential to the conduct of the business does not exempt him from this duty of reasonable care, nor does it lighten his burden thereunder. In fact it requires him to increase his care and watchfulness if necessary to make it commensurate with, and in proportion to, the patent, and to the reasonably expectable and foreseeable dangers which may injure his invitees and patrons."* (Italics ours.) And, as was pointed out in the case of Branch v. Klatt, 165 Mich. 666, 131 N.W. 107, 109: "One would have a right to presume that the defendant had discharged his duty of having the premises in a reasonably safe condition, as to lights and construction; and the ordinary person would naturally suppose that it would be safe to pass along a passageway pro-

vided for his exit with reasonable assurance of its being in safe condition."

The spaces described here and complained of by the plaintiff were not only hidden from view, but not reasonably observable in the exercise of ordinary care by the patrons, and, in our opinion, the maintenance of such unprotected spaces constituted negligence on the part of the management. See, Falso v. Poli-New England Theatres, Inc., 127 Conn. 367, 17 A.2d 5; Oakley v. Richards, 275 Mo. 266, 204 S.W. 505; Haugh v. Harris Bros. Amusement Co., 315 Pa. 90, 172 A. 145; Olsen v. John Hamrick's Tacoma Theatre, 9 Wash.2d 380, 115 P.2d 718; La Sell v. Tri-States Theatre Corp., Iowa, 11 N.W.2d 36; and Columbia Amusement Co. v. Rye, 288 Ky. 179, 155 S.W.2d 727.

Of course, the plaintiff could not have been guilty of any contributory negligence as a matter of law, for as a paying customer of the defendant theatre, she had a right to assume that the premises into which she was invited were safe and was not charged with any legal duty of looking out for lurking or hidden dangers. Lyric Amusement Co. v. Jeffries, 58 Ariz. 381, 120 P.2d 417; Durning v. Hyman, 286 Pa. 376, 133 A. 568, 53 A.L.R. 851; Riggs v. Pan-American Wall Paper & Paint Co., 225 Iowa 1051, 283 N.W. 250; Dondero v. Tenant Motion Picture Co., 94 N.J.L. 483, 110 A. 911; Haugh v. Harris Bros. Amusement Co., 315 Pa. 90, 172 A. 145; La Sell v. Tri-States Theatre Corp., Iowa, 11 N.W.2d 36; Branch v. Klatt, 165 Mich. 666, 131 N.W. 107; The Law of Mo-

tion Pictures and The Theatre, 306, Section 95; and annotations at 26 A.L.R. 616, 29 A.L.R. 30, 38 A.L.R. 357 and 53 A.L.R. 851.

The evidence shows that the plaintiff's attention was not called to the existence of these open spaces, that she had no personal knowledge thereof, and that they were not reasonably observable. Consequently, as was pointed out in the case of Riggs v. Pan-American Wall Paper & Paint Co., 225 Iowa 1051, 283 N.W. 250, 252, she was "not bound to especially look for dangers the existence of which would imply negligence on the part of the owner."

For the reasons assigned, the judgment of the Court of Appeal for the Parish of Orleans is annulled and set aside and the judgment of the district court is affirmed; the defendants to pay all costs.

HAMITER, J., concurs in the decree.

O'NIELL, Chief Justice (concurring in the result).

I concur in the conclusion that the defendant was guilty of negligence in failing to maintain a condition of safety in that part of the theatre which was reserved for the accommodation of the patrons; but I do not concur in the declaration that the better rule of evidence is that evidence as to whether similar accidents have or have not occurred previous to the accident in question in a case like this is not admissible. The objection to such evidence has reference only to the question of sufficiency or effect thereof, and not to its admissibility. It is admissible for whatever ef-

fect or importance it may have in a case where the question of negligence is in doubt. I concur also in the finding that the plaintiff in this instance was not guilty of contributory negligence; but my opinion is that the patron in a theatre might be guilty of contributory negligence as a matter of law, notwithstanding he or she has paid for admission and has the right to assume that the premises are in a safe condition.

## On Application for Rehearing.

PER CURIAM.

In the application for a rehearing, the defendants contend that the better rule of evidence is that testimony tending to show that great numbers of people over a long period of time went in and out of the building without any mishap is admissible to show that the defendant operator of the theatre was free from fault because by the exercise of ordinary prudence and care it could not have foreseen or anticipated that such an accident would occur. Upon a reconsideration of the record including this evidence and giving it full probative value, it is our opinion that the operator of the theatre by exercising ordinary care and foresight could have and should have anticipated that one of its patrons would step into the opening as it was adjacent to the steps where the patrons were required to walk and there was no light or any other precaution used to direct the attention of those using the stairs to the presence of the opening. Since there was not any balustrade, the only support one would have in

using the stairway would be the backs of the seats and necessarily the party would have to be walking close to the ends of the seats where the openings in question were permitted to remain. The operator of the theatre concedes that it knew of the presence of the opening and that it could have remedied the same. Therefore, the defendant which operated the theatre was lacking in the exercise of ordinary care and prudence and guilty of negligence in causing the plaintiff's injury.

With reference to the plea of contributory negligence, we reiterate that the plaintiff as a matter of fact was not guilty of a lack of proper care and attention because the theatre operator failed to place any warning whatsoever to indicate the presence of the opening into which she stepped and a prudent person by the exercise of ordinary care would not have anticipated there was an opening between the end of the seat and the step in the very isle which the defendants had provided for the use of the patrons.

Ordinary or reasonable care and attention vary with the facts and circumstances of the case, i.e., according to the dangers and hazards involved. For instance, in this case, the fact that the theatre was in semi-darkness would require stricter care than if it were brilliantly illuminated because it is obvious that patrons going in and out of the theatre could much better see where they were walking in the light than in semi-darkness. We did not intend to nor did we change the rule that the operators of theatres are held to ordinary and rea-

sonable care in protecting patrons against injuries.

Rehearing refused.