395 So.2d 866 (1981)
Fayella A. KEEN et al., Plaintiffs-Appellants,
v.
PEL STATE OIL COMPANY, INCORPORATED et al., Defendants-Appellees.
No. 14418.
Court of Appeal of Louisiana, Second Circuit.
February 16, 1981.
Rehearing Denied March 27, 1981.
*867 Hargrove, Guyton, Ramey & Barlow, Joseph L. Shea, Jr., Shreveport, for plaintiffs-appellants.
Wilkinson & Carmody by John S. Odom, Jr. and Arthur R. Carmody, Jr., Shreveport, for defendant-appellee, SWEPCO.
Bodenheimer, Jones, Klotz & Simmons by C. Gary Mitchell, Shreveport, for intervenor-appellee, Melton Truck Lines, Inc.
Before PRICE, JASPER E. JONES and FRED W. JONES, Jr., JJ.
En Banc. Rehearing Denied March 27, 1981.
FRED W. JONES, Jr., Judge.
The widow and children of Kenneth Keen filed a wrongful death action against Fountain, the driver of a vehicle with which Keen had collided in his fatal accident, Fountain's employer, the latter's insurer, and Southwestern Electric Power Company (SWEPCO). Upon the sustaining of a motion for summary judgment, the suit was dismissed as to Fountain's employer and its insurer.[1] A jury trial was held as to the remaining defendants and, pursuant to the verdict rendered therein, the trial judge signed a judgment in favor of plaintiffs against Fountain for $450,000, but dismissed the claim against SWEPCO.
Plaintiffs appeal this judgment, contending that the case should be remanded for a new trial on the claim against SWEPCO because the trial judge committed reversible error in ruling inadmissible (1) evidence relating to the cause of Keen's death and (2) evidence relating to the foreseeability of this type of accident by SWEPCO.
We affirm.
Context Facts
At about 5:00 A.M. on November 5, 1973, Keen was driving a tractor-trailer rig south on Hearne Avenue in Shreveport. At the same time Fountain was driving a pickup truck west on Hollywood Avenue, which intersects with Hearne Avenue. Both are four lane thoroughfares. As Keen, facing a green light, entered the intersection, his truck was struck by the vehicle operated by Fountain, who had run a red light. The impact of the collision forced Keen's rig into a SWEPCO utility pole located near the southwest corner of the intersection. The pole was sheared off and three energized distribution lines fell, two landing on the street surface and one on Keen's truck. Keen was killed as a consequence of his involvement in this accident.
Ruling on Evidence Relating to Cause of Death
Trial on the merits was held during the week of February 4, 1980.
Pursuant to the provisions of La.R.S. 33:1561 B[2] plaintiffs introduced into evidence *868 Keen's death certificate which had been completed and signed by the Caddo Parish Coroner. Under the section of the certificate dealing with cause of death, the following information was given:
"IMMEDIATE CAUSE
(a) Electrocution
DUE TO OR AS A CONSEQUENCE OF
(b) Thermal burns from diesel fuel fire
DUE TO OR AS A CONSEQUENCE OF
(c) Collision with truck and electric pole."
Later, in the presentation of their evidence plaintiffs called as a witness Dr. John Valiulis, a plastic surgeon. After being accepted by the trial court as an expert witness, Dr. Valiulis was shown photographs taken of the deceased Keen immediately after the accident, told that Keen had stepped out of his truck near a high voltage wire and was seen to jerk, and was asked to express his opinion as to the immediate cause of death. Upon objection by defendants, the trial judge ruled that Dr. Valiulis would not be permitted to answer this question because it was an attempt on the part of plaintiffs to impeach the death certificate, which had been filed on their behalf. In a proffer made by plaintiffs it was stated that Dr. Valiulis' answer to the question would have been that Keen died from electrocution.
Impeachment of a witness is an attack upon the credibility of that witness. Subject to limited exceptions, one may not impeach his own witness. La.R.S. 14:487. However, presenting the contrary testimony of other witnesses does not constitute the impeachment of one's own witness. La. R.S. 15:489.
In this case the Coroner listed the immediate cause of Keen's death as electrocution. Dr. Valiulis' testimony would not have contradicted this. However, the Coroner proceeded to state that the electrocution was due to "thermal burns from diesel fuel firing." This was obviously ambiguous and apparently an attempt to specify an alternate cause of death. As a consequence, Dr. Valiulis' testimony would simply have been an attempt to resolve this ambiguity rather than contradict the death certificate. Be that as it may, in view of the cited statutory provision, even if Dr. Valiulis' testimony had been contrary to the death certificate that would not have constituted an impeachment of the document. For these reasons we find that the trial judge erroneously excluded the testimony of Dr. Valiulis relating to the cause of Keen's death.
However, after examining the entire record, we conclude that this was harmless error since the evidence would have been largely cumulative. There is ample evidence in the record showing that Keen was electrocuted. One eyewitness stated that Keen "lit up like a Christmas tree" when he stepped from the truck. Larry Phillips, another eyewitness, testified: "I knew he was being electrocuted. I could see him jerking." Steve Robert stated that he started to open a door on the tractor-trailer rig and was shocked even before he touched it. On the other hand, no evidence at all was presented of a diesel fire. Both Dale Martin and Tommy Canella, who investigated the accident on behalf of the Shreveport Fire Department, testified that a tarpaulin covering some shingles on the trailer bed was on fire, but saw no indication of a diesel fire.
Not only did the jury have for its consideration the statement in the death certificate that the immediate cause of Keen's death was electrocution, it also had the testimony of these witnesses. Therefore, the trial judge's erroneous ruling that Dr. Valiulis' testimony on this question was inadmissible did not deprive the jury of an opportunity to hear critical testimony. It is for this reason that we characterize the error as harmless.
*869 Ruling on Evidence Relating to Foreseeability of Accident
Plaintiffs contend that the trial judge committed reversible error by ruling inadmissible evidence pertaining to the frequency with which vehicles struck electric utility poles in Shreveport, arguing that they were thus precluded from proving that SWEPCO should have foreseen the likelihood of this kind of accident and taken appropriate measures to protect those involved from falling energized wires. In his ruling the trial judge restricted plaintiffs to the offering of evidence as to the frequency with which vehicles in Shreveport struck utility poles and the lines fell.
Evidence of prior accidents is admissible for the purpose of proving notice of defects or physical conditions which are dangerous. Cassanova v. Paramount-Richards Theatres, 204 La. 813, 16 So.2d 444 (1943); Carriere v. Aetna Casualty Co., 146 So.2d 451 (La.App. 4th Cir. 1962). However, to be admissible that evidence must be closely related in circumstance to the hazard at issue. Miller v. Employers Mutual Liability Ins. of Wisconsin, 349 So.2d 1353 (La.App. 2d Cir. 1977).
In this case the "hazard at issue" was the danger of a vehicle striking a utility pole and thereby causing energized wires to fall to the ground. The evidence tendered by plaintiffs, considered by us in the form of an offer of proof, pertaining simply to the number of times that vehicles in Shreveport have struck utility poles, is not closely related to the "hazard at issue." This evidence was irrelevant because the mere showing that vehicles in Shreveport frequently collide with utility poles would not in itself serve to forewarn SWEPCO that this would likely result in the fall of energized wires. Consequently, the trial judge correctly held that this evidence was inadmissible.
On a related matter, plaintiffs also complain that the trial judge erred in excluding for purposes of rebuttal the deposition of Robert Baker, offered pursuant to La.C. C.P. Article 1450(2).[3]
In response to a question as to how frequently vehicles in Shreveport struck utility poles and thereby caused energized wires to fall, Charles Cook, a SWEPCO officer, stated that this had occurred only three times in 25 years. To refute this testimony plaintiffs attempted to offer in rebuttal the discovery deposition of Baker, another SWEPCO employee, which contained testimony that accidents of this nature happened "occasionally." The trial judge ruled that this was inadmissible because Baker's statement did not actually contradict that of Cook and, further, that this testimony should have been introduced by plaintiffs when they were presenting their case in chief. For these reasons the trial judge also refused plaintiffs' request to have an instanter subpoena issued for Baker to testify at the trial, which was nearing its conclusion.
The record does not establish that Baker was a SWEPCO officer, director, managing agent, or one designated under Article 1442 or 1448 to testify on behalf of SWEPCO, as required under La.C.C.P. Art. 1450(2) for his deposition to be used as proposed by plaintiffs. If Baker did fit into one of those categories, the trial judge erred in excluding the use of his deposition by plaintiffs for rebuttal purposes. Whether his testimony did in fact contradict that of Cook would have been an issue for determination by the jury.
*870 However, even if the deposition had been admitted into evidence, or if Baker had testified in person and repeated his deposition statement on this point, and if plaintiffs had established that SWEPCO should have foreseen the likelihood of this kind of accident, the record does not show proof by plaintiffs that SWEPCO was negligent in that it failed to employ reasonable safety measures in connection with the installation and maintenance of this particular electrical circuit.
According to the record, the conductors in question were bare wires, carrying some 12,000 volts of electricity, extending laterally across Hollywood Avenue and elevated 27 feet above the ground. Although this span was characterized as being on a stand-by basis because it did not directly serve customers, the wires were kept in an energized state for immediate use in the event of a power outage in the area. This circuit was installed in 1958.
Plaintiffs sought to prove the negligence of SWEPCO through the testimony of two expert witnesses, both highly qualified engineers, the thrust of whose testimony was that SWEPCO was negligent in either of the following respects: (1) In not de-energizing the span in question, since it was on stand-by and not in continual use; (2) in not insulating the wires over the street; or (3) in not placing those wires underground.
SWEPCO's expert witnesses, equally well-qualified, addressed each of these contentions, explaining:
(1) If this span had been de-energized, before use in the event of an emergency it would have been necessary to send out a crew to check the wires for defects, with the resultant delays. During that time hazards would probably be created, with traffic lights out, home lights out, and a municipal pumping station served by the circuit without power to function.
(2) Insulation is normally used where space between wires is restricted, not in a situation such as this. The average life of an insulated conductor is between seven and ten years. It may start to deteriorate within four years, and that deterioration can cause a failure in the line. When an insulated line breaks, the insulation usually snaps back away from the end of the wire, leaving it bare. Therefore, the disadvantages of insulation on a span such as that in question outweigh any advantages.
(3) Running wire through underground cables at busy intersections would be extremely hazardous to the public because it would be necessary to bring the wire down a pole where it could be readily exposed to casual contact, particularly near bus stops. Furthermore, the danger from vehicles striking exposed wires on these poles would be greatly increased. In addition, the connection between the overhead wire and the cable would be extremely vulnerable to lightning.
Therefore, in view of our conclusion that plaintiffs have not proven the negligence of SWEPCO even if the accident was foreseeable, we hold that any error committed by the trial judge in excluding from the jury's consideration the deposition of Baker, or his testimony in person, was harmless error.
Conclusion
For the reasons given we affirm the judgment of the trial court dismissing the suit as to Southwestern Electric Power Company, at appellants' costs.
NOTES
[1] Affirmed by us in Keen v. Pel State Oil Co., 332 So.2d 286 (La. App. 2d Cir. 1976).
[2] The cause of death, the manner or mode in which the death occurred, as rendered by the coroner and incorporated in the death certificate filed with the Office of Vital Records of the Division of Health shall be the legally accepted manner and mode by which the deceased came to his or her death and shall be the legally accepted cause of death; unless the court of the parish in which the death occurred, after a hearing, directs the coroner to change his decision as to the cause, mode or manner of death....
[3] At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

* * * * * *
(2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Article 1442 or 1448 to testify on behalf of a public or private corporation, partnership, or association, or governmental agency which is a party may be used by an adverse party for any purpose.