AYRES, Judge.
This is an action by a father in his individual capacity and as administrator of the estate of Coy Lynne Brya-nt, his 14-year-old daughter, to recover damages for injuries sustained by her at defendant’s skating' rink. From an adverse judgment, plaintiff appealed.
The record discloses that Coy Lynne Bryant fell over a tier of seats against a plate-glass window through which her hands and arms were thrust, and was severely cut by the broken glass.
Plaintiff’s cause of action is predicated upon the proposition that defendant was negligent in failing to provide a safe place for its guests and invitees, and particularly against falls such as occurred in this instance. The defense is a denial of any negligence on the part of the defendant. A further averment is made that the accident was caused by plaintiff’s daughter’s failure to use the facilities of the skating rink in the usual and customary manner, for which they were provided, and to properly observe her path of travel. For the same reasons, defendant, in the alternative, pleaded that plaintiff’s daughter was contributorily negligent.
Prerequisite to an appreciation of the issues as they are resolved is an understanding of the physical setup of the skating rink. The rink has approximately 16,000 square feet of floor surface. The portion set apart for skating is surrounded by a railing through which are openings for the' entrance and exit of the skaters. Between the rail and the wall on either side is a passageway of approximately 10 feet in-width, 33J4 inches of which, next to the wall, is a platform raised above the floor on which tiers of seats are located. A tier of six seats is located on a similar platform in the front of the building. Recessed at a distance of 101/2 inches behind this tier of seats was the plate-glass window involved in the accident herein concerned.. Between this row of seats and the railing-surrounding the skating area, serving as: a lobby, is a floor space having a width of 18 feet, 4 inches.
With the physical situation in mind, the-occurrence of the accident may be explained. Coy Lynne, after skating about arr hour and on expecting the arrival of a; friend, left the skating area through one of the exits in the railing and continued' to skate toward the tier of seats to the front of the building where she intended to sit and await the arrival of her friend.. As she approached these seats, her skates-obviously struck the edge of the platform upon which the seats are located and, as-a consequence of this impact, she stumbled and fell over the seats and into the window; her hands struck, broke, and thrust through the plate-glass window, inflicting the injuries for which damages are herein sought.
Appellant contends it is to be expected and anticipated that skaters will continually lose their balance and fall, and, therefore,, argues that defendant was negligent in his. failure to reinforce or protect the glass-window against skaters who could and' would likely fall against it. Cited in support of this contention are the cases of Cassanova v. Paramount-Richards Theatres, 204 La. 813, 814, 16 So.2d 444, 446; Cardone v. Sheldon Hotel Corporation, 160 Pa. Super. 193, 50 A.2d 700; Fieger v. Imperial Skating Rink, 1934, 148 Or. 137, 35 P.2d 683.
 We are in accord with the general pronouncements of these cases and for which they were cited, that owners of prem *57 ises upon which persons come by invitation, •express or implied, have a duty to maintain ■such premises in a reasonably safe condition for the contemplated uses thereof and for the purposes for which invitations are -extended. These cases, however, are also authority for the proposition that such proprietors are only charged with the duty to use reasonable and ordinary care to keep their premises in such safe condition. The pronouncements of these cases are, however, ■predicated upon states of facts readily discernible from the state of facts existing here. In this, they are distinguishable.
For instance, in the Cassanova case, while •descending an aisle-stairway in the balcony ■of a theater, plaintiff’s right foot went into ■a space between the end of a tier of seats and the edge of a step. This condition of the passageway, because of its defective lighting, was characterized as a “foot-trap.” In the instant case, no complaint is made that the skating rink was not well lighted ■or that the platform, tier of seats, or the window were not in full view of Miss Bryant.
The question involved in the Cardone •case was the sufficiency of evidence of ■negligence on the part of defendant for its ■submission to a jury. In that case, a bottle was broken and its fragments and contents were scattered over a dimly lighted -dance floor. A dancer, who was absent at the time of the aforesaid occurrence, returned to the floor and, while dancing, ■slipped upon the floor, which precipitated the injuries for which she claimed damages. Plaintiff was uninformed of the bro-Tcen bottle and the spilling of its contents ■.upon the floor.
Involved in the Fieger case was a similar •question as to the sufficiency of the evidence of negligence on the part of defendant. There, in an action by a patron who was pushed by other skaters against a window, from which she sustained a severe ■cut on her arm, the question was whether the owners had exercised ordinary care to protect their patrons from contact with the window by placing a bench, 19 inches deep and 32i/^ inches high, with a seat 16 inches from the floor, against the wall beneath the window. The window was flush with the wall of the building; the bench extended only 19 inches from the wall. It is observed there was, in the instant case, a raised platform 33j^ inches wide upon which a tier of seats was placed, forming a shield or barrier in front of the window, Moreover, the platform, as heretofore pointed out, was 18 feet, 4 inches from the railing enclosing the skating area.
Miss Bryant was thoroughly familiar with the skating rink, the skating area, the passageways, platform, tiers of seats, and the plate-glass window, because of her frequent patronage, averaging two or three times a week over a period of several months immediately preceding the accident.
In addition to the principle, heretofore referred to, that an owner or occupant of premises owes invitees and guests the duty to use ordinary care to maintain the premises in a reasonably safe condition for use in a manner consistent with the purpose of the premises, there is also a general rule to the effect that owners and operators of places of amusement are not the insurers of their patrons’ safety; that they are only required to guard against such hazards as may be reasonably expected or foreseen. Cassanova v. Paramount-Richards Theatres, supra; Givens v. De Soto Bldg. Co., 156 La. 377, 100 So. 534; Ramsey v. Kallio, La.App.2d Cir., 1952, 62 So.2d 146. See, also: Caillier v. New Orleans Ry. & Light Co., 11 La.App. 93, 120 So.76.
In the Givens case, it is said:
“Now the operator of a theater is not an insurer of his patrons. He need only be free from negligence; and, granting that a prudent man must exercise some degree of foresight, nevertheless he is not required to foresee that something may happen, when long experience fails to show any such happening before, unless the circumstances *58 are such that he should have known that the happening was likely even though it had not yet occurred.”
In Fieger v. Imperial Skating Rink, supra, the court stated:
“The proprietor of a place of public amusement is bound to guard against dangers that could reasonably be anticipated and averted by the exercise of ordinary care.”
Plaintiff would have it inferred that there is a duty upon the operator of a skating rink or other place of amusement to foresee any possible accident. But this, according to the settled jurisprudence, is not required. The true test is not whether some unusual type of accident can possibly happen, but whether the possibility of such an accident is sufficiently great that it is proper to say the operator of the amusement ought to have foreseen that possibility.
The facts of the instant case to which the aforesaid principles are applicable have already been detailed. However, it may be particularly pointed out that there was an area set apart for skating, separated from the aisles and the sections reserved for seating, as well as the lobby at the entrance to the building; the guardrails limiting the skating area were erected in the interest of safety for the patrons of defendant’s place of business. Under the facts of this case, would it be reasonable for the defendant to foresee or to expect that a skater would leave the area set apart for skating, take to an aisle or passageway reserved for patrons and guests, and continue to skate across a lobby 18 feet wide, strike a platform, stumble and fall upon, over and across a tier of seats located thereon, and strike and break a plate-glass window located beyond both platform and tier of seats? To require such forethought and anticipation would, in our opinion, place an undue burden and responsibility upon the defendant beyond that of a reasonable and prudent operator, and impose upon him a duty toward his patrons and guests beyond due and reasonable care.
Negligence is the failure to use such care as is necessary to avoid a danger which should and could have been anticipated by a reasonable and prudent person.
 The conclusion is inescapable that the danger of which plaintiff herein complains was one not foreseeable by the defendant. Reasonable or ordinary care meets the legal requirements imposed upon the defendant. The proof offered is insufficient to show a failure of the defendant to exercise such care. Consequently, plaintiff, in our opinion, has failed to establish his demands by a reasonable preponderance of the evidence and to a legal certainty as required by law.
Accordingly, the judgment appealed should be, and it is hereby, affirmed at plaintiff-appellant’s cost.
Affirmed.