GLADNEY, Judge.
The plaintiff herein, Lola Ethel Allen, has instituted this action ex delicto by reason of personal injuries sustained in a fall at a small restaurant located in Shreveport. Named as principal defendants are James Honeycutt, the proprietor, his liability insurer, Hartford Accident and Indemnity Company and Mrs. William R. Barrow, an owner and lessor. Other parties were brought into the suit by third party proceedings and a summary judgment for indemnification was obtained by Mrs. Barrow and Continental Casualty Company against Allen E. Couvillion and George E. Dement, lessees of the owner. Following trial on the merits damages were awarded in favor of plaintiff and against the named defendants, other than Mrs. Barrow. Appeals have been lodged in this court by Miss Allen as to her demands against Mrs. Barrow, by Hartford and Honeycutt, and by Allen E. Couvillion and George E. Dement. Miss Allen and Mrs. Barrow and Continental Casualty Company have filed separate answers to the appeal.
*772 The accident which befell Miss Allen occurred at the Po-Boy Grill, a small compact building located at 617 McNeil Street. Approximately three hundred customers enter and leave the building daily through one door of average width and height located about midway of the length of the building on the side adjacent to the sidewalk. A description of the passageway is pertinent. The door is of hollow steel, with hinges on the left side of the exit. The top half is fitted with clear glass. Honeycutt had affixed in a vertical position to the right inside of the door a chrome bar handle of one-half inch in diameter and about fifteen inches in length. It was made secure by two brackets, one at each end. The handle in some way was connected to each bracket. Four sheet metal screws were inserted in the top bracket and two in the lower. In falling plaintiff pulled the handle from the door. According to the testimony of Honeycutt, the screws holding the brackets in place were not loosened by the displacement of the handle and he later removed the screws and brackets from the door and placed them in a drawer in the grill where they were when the business changed ownership prior to the trial of the case. Neither the handle, brackets or screws were available as evidence for the trial. The handle and its attachments were purchased for the purpose of use as a door handle. The door, approximately one and three-quarters inches in thickness, was equipped with a Yale door check but contained no latch. It opened to the outside and when closed is flush with the outside wall. The door step consists of a semi-circular block of concrete with dimensions of fifty-eight inches in width, thirty-two inches deep and six and one-half inches in height. Covering the threshold of the door is a custom-made metal plate about twelve inches wide securely affixed to the floor. The exterior portion of the plate is flat and level for approximately three and one-half inches, then for one and one-half inches it rises, completing a rise of one inch in the process and then levels off for seven inches. The top of the plate is smooth and unpainted. The uncontra-dieted testimony of Honeycutt discloses that at the time of the accident a rubber door mat was laid over the steel plate and only that portion directly under the door was not covered by the mat. This testimony was corroborated by John O. Crawford, an employee, who testified that at ten-thirty on the morning of the accident he swept and put the rubber mat in place. The mat was described as having a smooth surface on top and a kind of foam rubber suction bottom. The mat, when spread out, extended over either side of the door and was kept snug against the moulding. Its thickness was estimated as being three-quarters of an inch.
Miss Allen testified that on March 22, 1962, shortly after the noon hour, having eaten lunch in the grill she attempted to-leave and in doing so sustained severe injuries from a fall which occurred as she stepped to the doorway. The door handle became disengaged while she was falling and was in her left hand when she struck the sidewalk outside of the grill.
It is contended that plaintiff’s fall was-occasioned (1) by the negligent and faulty construction, installation or maintenance of the door handle, and (2) by the negligent and faulty construction, installation or maintenance of the door framing, particularly the bottom thereof, said negligence and fault being predicated on the use of a smooth, slant surfaced metal plate across the bottom of the doorway precisely where patrons using the door must step, and (3) by the negligent and faulty construction and installation of the stepping arrangement, particularly providing only three and one-half inches of level surface between the slanted portion of the outside edge of the threshold.
Honeycutt is further charged with actionable negligence in that he exposed the invitees to his business to dangerous conditions arising out of the faulty door han- *773 die, out of the design and construction of the threshold, out of the design and construction of the step arrangement, and in failing to provide a safe place for his customers and in failing to warn them of the hazardous conditions so enumerated.
As against the defendant, Mrs. William R. Barrow, the petitioner alleged her negligence to consist of (1) failing to maintain her building in a safe condition and proper state of repair and because of vices in construction with reference to the threshold, door handle and stepping arrangement, and (2) it is charged that she was negligent in leasing a building which contained a door handling system and stepping arrangement that was dangerous and faulty in design and maintenance.
The trial judge assigned written reasons for his judgment in favor of Miss Allen and observed that she testified she did not know what caused her to fall, but that when she started out of the door she had the sensation of falling and she recalled trying to grab or catch something with her right hand, and when she hit the ground she had the handle of the door in her left hand; and he further surmised that the only explanation for her fall was that she had either slipped from the edge of the threshold and as she attempted to support herself with the handle on the door it pulled loose from the brackets and she fell out, or that when she stepped out of the door supporting herself with the handle, the handle pulled loose, causing her fall. The court held that plaintiff had proved her fall was caused by the negligent and faulty installation and maintenance of the door handle, and assigned therefor two reasons, the first of which was that the handle was inadequate to support the weight of a person using it and secondly, that Honeycutt was negligent in failing to secure the lower bracket holding the handle with but two screws when such bracket was designed to hold two more screws.
The record entirely fails to establish the initiating cause of plaintiff’s “fall. There were no eyewitnesses to the fall and we must depend solely upon the testimony of Miss Allen. We are, therefore, confronted with uncertainty and speculation as to the cause of her accident. The trial judge stated that he was impressed with the veracity of Miss Allen and so are we, yet the fact remains that she could not and did not recall circumstances which are essential to the establishment of her case. Typical of her testimony are the following extracts where counsel repeatedly attempted without avail to elicit from her the certain cause of the accident:
“A * * * got up and I remember walking to the door, and as I started out the door, I remember falling. I either slipped or something, and I definitely remember falling, and I was trying to hold on or catch myself, and I fell on this hand, but I definitely fell as I started out the door.
“Q You say you either slipped or stumbled or fell, or — ■
“A I don’t know.
“Q You don’t know1 how you fell? You don’t know what caused you to fall, Miss Allen?
“A Well, I remember getting to the door, and I remember walking— getting up from the stool and walking to the door, and then as I started out, the next sensation was I was falling, and I kept trying to grab, to catch something, and that’s the reason that I crushed this arm here. I was trying to grab, and I knew all the time that I was falling, and I hit this arm on the sidewalk like that, and it crushed. (Indicating)
“Q Now, when you were falling, did you grab anything to keep you from falling, or—
*774 “A I don’t know, but when I hit the ground I had the handle of the door in my hand.
“Q Had the handle of the door in your hand?
“A Yes, sir.”
* * * * * *
"Q You got to the door?
“A Yes, I wasn’t falling — I walked to the door. I wasn’t falling from the inside.
“Q And when you went to open the door, is that when you fell?
“A That’s when I fell.”
******
“Q Were you trying to break your fall by grabbing this handle?
“A I don’t know whether I grabbed the handle. I guess I did. I don’t know. I had the handle in my hand when I fell.
“Q Probably you were trying to break your fall by grabbing something within reach ?
“A Yes, I had it in my hand.
“Q Is is possible, Miss Allen, that you missed your step when you were stepping out of the door?
“A I don’t think so, because I had the sensation of falling from the top. I don't think I ever tried to hit the step. I had that sensation that I fell from up high.”
***** *
“Q Did you tell him that you didn’t know whether you slipped or tripped or what caused you to fall ?
“A Yes, sir.
“Q In other words, you don’t know just what caused you to fall, do you?
“A I know I fell just as I got to the door.”
******
' “Q .Well, the fall was on the ground, the handle was on the door, so either you had the handle before you started or you got it while you were going down? I mean, that would be the logical conclusion, I guess?
“A I don’t know.”
* *****
“Q You don’t recall having been looking down prior to the fall?
“A I was healthy. I am healthy. I am a healthy person. I have always been a healthy person. I went down there and ate and started out to go and get my hair fixed, and the next minute I was falling. I am not subject to dizziness or blackouts or anything, never have been, and when I started out, I fell down.
“Q But you don’t recall—
“A I fell from the top.
"Q Did you fall from the inside of the building or from the—
“A Well, I fell from the inside of the place, because I was falling a long time before I hit.
“Q And I believe you stated in answer to Mr. Bethard’s questions that you don’t recall whether your foot slipped, causing you to fall, or whether your foot slipped after you started to fall?
“A I don’t think you can remember those things.
“Q But you don’t recall?
“A Something happened right at the door there. I either slipped or something.
*775 “Q Was there any sensation of a toe or a heel catching as opposed to ' slipping?
“A I don’t remember.
“Q You say you do not have a recollection of the nature of the handle, it was just a handle in your hands?
“A Yes, sir.
“Q Do you know for a fact that it was the handle from the inside of the door ?
“A Oh, yes, I know that I pulled the handle, because Mr. Honeycutt told someone that I pulled it off, and I heard them say that I pulled it off.
“Q Well, when you say pulled it off, you assume that either it came off first or you pulled it off, but it was just in your hand?
“A Anyway, it was in my hand.”
The record is replete with photographs depicting every part of the passageway. Missing from the record are the mat, door handle and brackets and screws. These articles were not available for introduction into the record, nor were they photographed. The record also contains the testimony of three expert witnesses, two architects and a structural engineer, all of whom testified concerning the design and construction of the passageway with respect to its safe or unsafe condition. We confess we are not greatly impressed with the value of this testimony. Our opinion is similar to that expressed by Judge McCaleb in Lawson v. D. H. Holmes Company, La.App., 200 So. 163 (166) wherein he stated that such expert testimony was not entitled to any greater weight than that of a lay witness. In the cited case where the question of whether or not a steel plate across a threshold of a door (similar to the one in the instant case) was dangerous, the Court observed that the question of safety vel non could be fully answered by a casual examination of the photographs. Of some interest herein is the observation made in the same case wherein the court cited with approval the following quotation from S. S. Kresge Company v. Fader, 116 Ohio St. 718, 158 N.E. 174, 175, 58 A.L.R. 132:
“Not every accident that occurs gives rise to a cause of action upon which the party injured may recover damages from some one. Thousands of accidents occur every day for which no one is liable to damages, and often no one is to blame, not even the ones who are injured. The character or extent of an injury has no bearing upon the question of the liability therefor; neither has the wealth nor the poverty of either party to such a litigation anything to do with the question of liability for the accident.”
The resolution of this case involves certain well established legal principles, hereinafter briefly set forth. Well settled is the rule that a proprietor or storekeeper is not the insurer of the safety of his patrons and need not keep his premises in a perfect condition but is only held to the duty of exercising ordinary care and prudence to keep them in a reasonably safe condition for use in a manner consistent with their purposes. Similarly recognized is the principle of law that unless an act, either of commission or omission, can be said to be a proximate cause of the resulting injury, it does not afford a basis for liability. Thus proof of a proximate causation is an absolute requisite to recovery. In the case of Harvey v. Great American Indemnity Company, La.App., 110 So.2d 595 (2nd Cir.1959), we observed that a remote cause as distinguished from a proximate cause is that which is behind the proximate cause, which produces the injury, and those damages which are a result of a remote cause form a part of that large mass of resulting losses styled “damnum absque injuria” for which the law permits no recovery. Negligence thus is a cause in fact of the harm to another only if it is a substantial factor in bringing about that harm. Perkins v. Texas *776 and New Orleans Railroad Company, 243 La. 829, 147 So.2d 646, 648 (1962).
When seeking- to recover damages for injuries occurring on the premises it is incumbent upon a plaintiff to prove a case in tort with legal certainty and by a fair preponderance of the evidence. LSA-Civil Code Articles 2315, 2316, 2322 and Dunn v. Tedesco, 235 La. 679, 105 So.2d 264, 84 A.L.R.2d 1184 (1958). In order to succeed in this action it was incumbent upon plaintiff to show by a preponderance of the evidence not only that the premises were defective in some respect as alleged but also it must be demonstrated that such defect caused or contributed to plaintiff’s injuries. Dunn v. Tedesco, supra.
We have reached the conclusion that plaintiff has failed to establish by a preponderance of the evidence that the cause of the fall was due to actionable negligence by any of the defendants. We have been left to speculate as to any act of negligence which could have contributed to the accident. In this respect, however, the evidence plainly discloses the passageway used by Miss Allen was not dangerous or hazardous. Although, in our opinion, the metal plate across the threshold was not unsafe, proof of the presence of the rubber mat removed any further question with respect to the safe condition of the threshold. Furthermore, as plaintiff’s testimony shows that she was in the process of falling before stepping out of the building, any issue with respect to the negligent design or placement of the outside step must be considered irrelevant. The testimony of Miss Allen discloses that her fall commenced prior to any detachment of the handle from the door and consequently the detachment of the handle could not have caused the fall.
For the reasons assigned it is ordered, adjudged and decreed that the judgment appealed from be and it is hereby annulled, avoided and reversed, and it is now ordered that there be judgment in favor of defendants rejecting plaintiff’s demands and dismissing this suit at her cost.