185 So.2d 336 (1966)
Mr. and Mrs. James A. SULLIVAN, Individually and as Natural Tutors of the Minor, Patrick A. Sullivan,
v.
BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA and St. Andrew Methodist Church.
No. 2154.
Court of Appeal of Louisiana, Fourth Circuit.
April 4, 1966.
Rehearing Denied May 2, 1966.
Writ Refused June 8, 1966.
*337 Charles L. Rivet, New Orleans, for plaintiffs-appellees.
Bienvenu & Culver, Ernest L. O'Bannon, and Robert N. Ryan, New Orleans, for defendants-appellants.
Before REGAN, YARRUT and HALL, JJ.
HALL, Judge.
Mr. and Mrs. James A. Sullivan, individually, and as "natural tutors" of their minor child, Patrick A. Sullivan, brought suit against St. Andrew Methodist Church and its public liability insurer seeking to recover for the use and benefit of said minor damages in the sum of $30,000.00 for personal injuries received by him on March 29, 1963, when he ran into a sliding glass door on the church property situated in the City of New Orleans. Mr. Sullivan, individually, prayed for reimbursement of "all medical bills to date," for $5,000.00 for future medical bills, and for $77.00 wages lost by his wife while nursing the injured boy.
The petition alleged that the "sole and exclusive cause of the injuries to said minor" was the gross negligence of the church:
"1. In permitting a clear glass door, without any markings, to indicate that the door was closed, which is a hazardous condition, to exist on its premises, jeopardizing the safety of persons on the premises.
"2. In failing to give warning of the hazardous condition although it knew or should have known of the condition.
"3. That with children of tender age playing in the area of the sliding door, the danger of children running into and through the said door could be foreseen."
Defendants filed exceptions of no cause and of no right of action and of vagueness, which were overruled. Defendants then filed a general denial and alternatively plead contributory negligence on the part of Mrs. Sullivan, imputable to Mr. Sullivan, in failing to properly supervise the child.
Following trial on the merits judgment was rendered in favor of Mr. Sullivan as administrator of the minor's estate in the sum of $7,500.00 plus interest and costs.
The judgment contained no mention of the individual claims of Mr. Sullivan, which is equivalent to a rejection of such claims. Defendants appealed.
The issues presented are whether the church was guilty of negligence, and, if so, whether the damages awarded are excessive. Contributory negligence is not an issue. Young Patrick was incapable of contributory negligence as a matter of law, being only five years old at the time of the accident. His mother's negligence (if any) is not imputable to him. (See Kliebert v. Marquette Casualty Company, La.App., 119 So.2d 545) And since plaintiffs neither appealed nor answered the appeal the special damages claimed by Mr. Sullivan have passed out of the case.
*338 Defendants reurged their exception of no cause of action in this Court but we prefer to examine the case on the merits.
The record reveals the following facts:
On the night of March 29, 1963, Mrs. Sullivan, accompanied by her children, including five year old Patrick, attended a cub scout meeting in the Educational Building of St. Andrew Methodist Church. Patrick was not a member of the scouts. They were invited to attend the meeting by Mrs. M. J. Thiberville, Mrs. Sullivan's sister, in order to witness a "speed derby race." Mrs. Thiberville's husband was the Scout Pack Master. After the meeting was over some of the adults including the Thibervilles, lingered in the meeting room to discuss future scout plans.
The room in which the meeting took place was rectangular in shape. One side wall of the room consisted of alternate sliding glass doors and solid glass panels. The doors opened onto a small paved alcove or passageway between the educational building and the church which led out to the rear of the buildings. Mrs. Sullivan testified that just prior to the accident she was standing in the center of the room holding her baby and her sister's two older children by their hands and was talking and playing with them. She further testified that she saw Patrick run out of the open door-way and begin to play tag with some boys in the passageway; that shortly thereafter someone (she did not know who) closed the door, then walked past her and went to the opposite end of the room where the other adults were gathered; that some minutes later she saw a little boy chasing Patrick who attempted to elude him by running back into the room; that she saw Patrick coming in and yelled "Pat" but he crashed through the closed glass door and fell into the room cutting himself on the shattered glass.
On cross examination Mrs. Sullivan admitted that although she saw Patrick go outside of the building she did not actually see him playing tag, nor did she see anyone chasing him, but testified that she did see him run back in and crash through the glass. Patrick corroborated his mother's testimony.
The only other witness who professed to have seen the accident was 10 year old Lee Sweeny, Jr., a member of the cub scouts, who testified that he saw Patrick playing tag with other children inside the room; that Patrick darted away from the other children as if to avoid a tag, and ran into the closed glass door and fell backwards into the room.
The Trial Judge evidently accepted Mrs. Sullivan's account of the accident and we find no manifest error therein.
The only negligence charged to the church is that it permitted to exist on its premises a clear glass door without any markings to indicate when the door was closed, and that this created a hazard especially to children, and that the church failed to give any warning of this hazardous condition. There is no contention that the door was out of order or that it needed repair, and no contention that anyone connected with the church closed the door while the children were playing outside.
The testimony shows that the educational building of the church was erected in 1958 and had been in use as a Sunday School building for all age groups, including children of tender years. It had also been used for meetings of all kinds, including Cub Pack meetings for five years prior to the time of the accident. At no time prior to the accident had anyone ever run through or broken any of the doors or panels of the building. The record does show, however, that on one occasion the church janitor, while talking to the pastor a foot or so from the glass door, turned and without looking, bumped into the glass. It is clear from the testimony that if the door had been made of wood the janitor would have bumped into it because he was not paying attention to what he was doing.
The record reveals that the door which Patrick ran into was a sliding glass door manufactured by a nationally known concern. *339 The door was six feet high and had an overall width of four feet. It had a narrow metal frame and was fitted with a handle on one side. The glass was crystal sheet glass 7/32" thick and 3' 6" to 3' 8" wide. It had no decals or other markings.
Three eminent architects testified with reference to the use of sliding glass doors. Mr. S. Sharpe Stanfield and Mr. Joseph Grima Bernard testified on behalf of the defendants; Mr. George Riehl testified on behalf of plaintiffs. All three architects agreed, and the parties also stipulated, that there is nothing in the New Orleans Building Code or in any City Ordinance or State Law or any regulation which either prohibits or regulates the use of sliding glass doors such as that used in the church's educational building.
Mr. Stanfield testified that he designed the building where the accident occurred; that the sliding glass door involved herein was of standard design and thickness; that such doors are in general use in schools, in residences, and in churches; that they are used in 90% to 95% of the buildings, both residential and public, now being constructed; that their use is perfectly safe and good architectural practice; that when he designed the building he knew it was to be used for an educational building and for meetings, and that people of all ages, including children of tender years would use it; that if he had to redesign the building with this accident in mind he would not change the type of doors. With reference to the glass itself, Mr. Stanfield stated that the same glass has been used in some of the Orleans Parish schools; that the Lawless Elementary School contains 60 or 70 doors of this type glass; that another church in New Orleans has used the same type sliding glass doors without decals or markers for years without mishap; that the use of such doors without any decals or other markings is a standard, ordinary, and perfectly safe architectural practice, and that an accident such as happened to Patrick was an extremely rare occurrence.
Mr. Bernard testified that he had looked at the church and had examined the plans; that the design and construction of the educational building, including the sliding glass doors, for use as a Sunday School and for such things as Cub Pack meetings was in accordance with perfectly safe and proper architectural practice; that he himself has used such doors in similar situations; that he himself used such sliding glass doors in two kindergarten class rooms of a school which he designed for the Orleans Parish School Board in 1959 and there have been no accidents; that the glass he used was crystal sheet glass 7/32" thick; that he did not use shatterproof glass or wire glass nor any decals or markings of any kind; that such doors are used in any number of buildings in New Orleans, including many schools, and in homes and in motels; that the doors are manufactured by a national concern and used all over the country. In response to a question by the Trial Judge, Mr. Bernard stated that since this accident was brought to his attention he has thought the matter over thoroughly two or three times and that he was still of the opinion that the use of this type of sliding glass door was perfectly safe and proper and that he "would not go back now to the kindergarten and redesign it. I really don't feel that I would be building in a hazard anymore than other items of construction would be."
Both Mr. Stanfield and Mr. Bernard testified that an accident such as occurred to Patrick Sullivan was in their opinion a "one-in-a-million" incident.
Mr. George Riehl was called by plaintiffs as their architectural expert as a last minute substitute for another architect who was called out of town. Mr. Riehl testified that there is no prohibition against, nor regulation concerning, the use of clear glass sliding doors such as the one in question; that their use is a matter of choice with the individual architect. He would not state, without checking, whether or not such doors are commonly in use and confined all of his testimony to his own individual preferences and practices. He offered no criticism of *340 the manufacturers of the door in question, but stated that he personally would not use clear glass doors in a public building for the reason that "it looks like there is no glass in it at all;" that if he used glass doors he would use wire glass, shatterproof glass, or would put decals or other markings on the doors.
Defendants' expert, Mr. Stanfield, testified that he would not use wire glass in such a door because it would be aesthetically objectionable; that shatterproof glass presents the same appearance as clear crystal glass and the only difference would be, if someone bumped into it, he would injure himself without being cut. He further stated that he would not himself design a glass door and then put decals on it.
The question to be resolved in this case is whether the church was negligent in having and maintaining in a building frequently used as a gathering place for children a door of a type which is widely and commonly in use. Plaintiffs' only contention is that the door was a hidden danger to children. They say:
"It is recognized that under normal conditions, where adults are injured, some courts have held that the plaintiff should have seen an ordinary glass door. But where children are invited and welcomed to run about and play, and injury results, the law deals with them differently than it does with adults. Children are necessarily lacking in the knowledge of physical causes and effects; they act upon childish instincts, impulses or reasoning, and must be presumed to have less ability to take care of themselves than adults have."
In Guidry v. Hamlin, La.App., 188 So. 662, our predecessor Court, through Judge Janvier, denied recovery for injuries to a small child two years of age who fell from a balcony to the ground. The porch railing had horizontal bars, the lower one of which was 19½ inches from the porch level. It was argued by plaintiffs that the porch should have had vertical pickets which would have made it impossible for the child to have slipped through. The Court said:
"* * * It is apparent that the rail in question was perfectly safe for all persons except those so young or so small as to require special care and attention. There is nothing dangerous to the normal person in such a rail. There is danger only if there is involved one so young as to be incapable of exercising care, and, in the case of so young a person, everyone is justified in assuming that special attention, or care, or supervision, will be afforded by parents or others in authority. The rail provided here is identical with rails found in numerous other buildings. * * *
"* * * There is no duty in the owner of a building * * * to anyone rightfully within the building, to provide any particular type of construction, unless, of course, the rail, or the stair, or the floor, which is complained of, obviously provides a trap, or is dangerous even to the reasonably prudent person. It is true that, under Art. 2315 of the Civil Code, liability to any person * * rightfully on the premises, might result from negligence in creating such a trap as we have referred to; but, surely, even that article cannot be construed as placing upon a house owner liability merely because he does not make his building fool-proof, or because he does not so construct it as to make it impossible for infants to injure themselves."
The Court concluded by saying:
"We do not base freedom from liability upon the contributory negligence of the parents, but solely upon the fact that there is no negligence in the owner of the building in failing to foresee that the parents will not protect their very young children against such dangers."
To the same general effect see Golden v. Katz, La.App., 11 So.2d 412. See also *341 Browne v. Rosenfield's, Inc., La.App., 42 So.2d 885 wherein it was said:
"* * * Strangers are not liable to children for negligence in carrying on their business beyond what would be their liability to others, as well as children, who are equally free of blame. * * *"
In American Fire & Casualty Co. v. Jackson, 5 Cir., 187 F.2d 379, the syllabus reads:
"Under Louisiana law, negligence cannot be predicated of (sic) common and ordinary objects such as walls, fences, stairs, and gates, and other used and useful structures and apparatus, and conditions arising in and from ordinary conduct of business, which are safe for use by adults, merely because they cannot be safely used by babies unattended by adults charged with duty to look after them. Rev.Civ.Code La. Arts. 2315, 2316."
There are no reported cases in Louisiana involving glass doors. However in those jurisdictions which have dealt with the subject it has been held in several cases that it is not negligence per se for the owner of a building to have on his premises a clear sliding glass door. (See cases collected in the annotation in 68 A.L.R.2d 1204; see also "A.L.R.2d Later Case Service," Vol. 5, p. 1094.)
Plaintiffs do not contend that they have made any showing of negligence on the part of the church beyond the fact of having such a door on its premises. The use of wire glass or safety glass in the doors would not have prevented injury to Patrick Sullivan, nor would the use of decals on the door. Children can injure themselves on almost anything in a home or other building.
We are asked to hold that the door was a trap, a "hidden danger", obliging the church to place guards on it, or at least to give warnings to all persons using the educational building. To so hold under the facts presented in this case would be to declare that simply to build or maintain such a door is negligence per se, and would make every home owner, church, school or business with similar installations a virtual insurer of those who run into or through such doors. We cannot so hold. To do so would convict of negligence many owners of new homes, churches and schools as well as the architects who designed their buildings.
The fact that this was a building devoted in part to children's Sunday School and other meetings attended by children does not in our opinion alter the case. The educational building had been in operation for five years without a similar incident. There is no showing that the building was used for children to romp and play in, and the church in our opinion had the right to assume that if a child of the tender years of Patrick Sullivan attended a meeting in the building he would be accompanied by a parent or someone else and would be properly supervised.
For the foregoing reasons the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be judgment herein in favor of the defendants, St. Andrew Methodist Church and Birmingham Fire Insurance Company of Pennsylvania, and against the plaintiffs, Mr. and Mrs. James A. Sullivan, rejecting said plaintiffs' demands and dismissing their suit; costs of both Courts to be borne by plaintiffs.
Reversed and rendered.