286 So.2d 738 (1973)
Gordon NATAL, Sr., Individually and on behalf of his minor daughter, Melanie Natal,
v.
PHOENIX ASSURANCE COMPANY OF NEW YORK et al.
No. 5424.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1973.
Rehearing Denied January 8, 1974.
Writ Granted March 1, 1974.
*740 David Gertler, Owen J. Bradley, Steven R. Plotkin, New Orleans, for plaintiff-appellant.
Wood Brown, III, Montgomery, Barnett, Brown & Read, New Orleans, for defendants-appellants.
Bruce J. Borrello, New Orleans, for defendants-appellees.
Marcel Livaudais, Jr., Loeb & Livaudais, New Orleans, for defendant-appellee.
Before REDMANN, LEMMON and BAILES, JJ.
REDMANN, Judge.
A homeowner and his insurer appeal from a judgment casting them for personal injuries his 14-year-old cousin suffered on walking through a sliding glass door at his home. Plaintiffs (the now-major cousin, substituted on appeal, and her father) also appeal from the dismissal of their suit as against the house builder, the engineer who allegedly "approved" the house plans, and the alleged manufacturer of the door.
The engineer's only arguable responsibility was for soundness of foundation and framing of the house. The alleged manufacturer was not shown to have made or assembled the door. Judgment dismissing them was correct.
The builder, not sued until more than a year after the accident, pleaded the one year tort prescription, C.C. art. 3536. There having been no showing of interruption of prescription, such as by citation of a solidary co-obligor, art. 3552 (as in Pearson v. Hartford Acc. & Indem. Co., La. 1973, 281 So.2d 724), any claim against the builder is prescribed and judgment dismissing him was also correct.
Hereafter "plaintiff" refers to the injured child alone and "defendant" refers to the homeowner alone.

Motion to Produce Plaintiff
Prior to our hearing, the homeowner, citing Kuebler v. Mixon, La.App.1969, 218 So.2d 63, moved this court for an order to require the injured plaintiff's presence at appellate argument, since she had been "introduced into evidence" at the trial. We refused the motion as premature, believing that her counsel would see to her presence, failing which we would then reconsider the motion. She was present for argument (though this court was not shown her scars).

Facts
Plaintiff had visited defendant's home on many occasions in the past, perhaps monthly. On April 23, 1967, she went to the home about 4:30 p. m. for an informal swimming party. During the course of the party, she passed several times through the sliding glass door, which opened from the den into the outside pool area, although she never had to open the door because she passed through with others. At about 8:30 or 9 p. m. she was upstairs in the house when told her father was on the outside telephone for her. She went downstairs, then through the den, which was not illuminated (as the trial court concluded from sufficient evidence), intending to pass to the adjacent exterior patio, which was well illuminated, to take the phone from a table situated just outside and to the left of the glass door. The sliding panel of the glass door was to the left of its stationary panel, each panel being three feet wide and framed by aluminum. As plaintiff was walking at an ordinary pace to get the phone, she walked into the closed door and it shattered, injuring her.

*741 Trial Court Reasons

The trial judge's reasons noted plaintiff's testimony that she was bending over (as if to begin reaching for the `phone) when she struck the door: "It is just when I came downstairsI mean, I would look I wouldn't just not look at all. If I was paying attention to looking at the phone, I couldn't see the door. I had to be paying attention. I had to see that this door wasn't there."
The court opined, "In this case there was an `illusion of space;' `a bringing of the outside, inside;' there was prior notice to the owner of the danger of the particular glass sliding door [a former employee of defendant one unspecified time "walking and talking, * * * bumped into the door"]; there was the lighted patio and swimming pool and the darkened den; and there was the placing of the telephone in such a position as to cause an illusion that it was inside the den." (Bracketed matter added.) The court reasoned the grouping of circumstances was negligence by defendant which could have caused any ordinarily prudent person to do just as plaintiff did in reaching for the telephone, and therefore plaintiff's behavior was not contributory negligence.

Homeowner's Liability
We are unable to find liability on the part of the homeowner under either the general tort rule, C.C. art. 2315, or the specific rule for building owners, art. 2322. (Art. 670, stating an owner's liability to "neighbors or passengers" [passers-by], is not applicable when the person injured is on the property itself; see Cothern v. LaRocca, La.1970, 255 La. 673, 232 So.2d 473.)
Art. 2322 makes the building owner "answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
However, assuming without deciding that the use of a glass door that breaks when walked into is a vice of construction, the owner is only responsible for "damage occasioned by [the building's] ruin" (resulting from the vice), meaning "the actual fall or collapse of a building or one of its components", Davis v. Royal-Globe Ins. Cos., 1970, 257 La. 523, 242 So.2d 839, 841. Plaintiff here was injured not because the door fell on her, but because she broke the glass and made it fall. We cannot consider the breaking of a window or glass door as, legally, the building falling or collapsing.
Thus liability can only be based on art. 2315 fault. See Smolinski v. Taulli, La. 1973, 276 So.2d 286.
We therefore discuss the several circumstances recited by the trial judge as constituting fault.

The Glass Door
Plaintiff's expert psychologist well explained what, upon reflection, is recognizable as the purpose of using glass expenses such as doors and picture windows. Every glass door intends to let one see through, and in that sense to create an "illusion of unimpeded space." But a homeowner's merely having a sliding glass door is not fault, negligence or imprudence within C.C. arts. 2315 and 2316; a proprietor has the right to use and enjoy his property "in the most unlimited manner" not prohibited by law or ordinance; C. C. art. 491. See also Sullivan v. Birmingham Fire Ins. Co. of Pa., La.App.1966, 185 So. 2d 336, writ refused 249 La. 390, 186 So.2d 632.
The obligation of a homeowner is to warn guests "of hidden or concealed perils of which he knows or should know in the exercise of reasonable care * * *", Foggin v. General Guaranty Ins. Co., 1967, 250 La. 347, 195 So.2d 636, 641 (quoting Savell v. Foster, La.App.1963, 149 So.2d 210, 212; emphasis ours). A *742 host has no duty to warn a guest of a potentially dangerous condition which is obvious to the reasonably prudent man; Kuhn v. Oulliber, La.App.1969, 225 So.2d 317, writ refused 254 La. 839, 227 So.2d 589.
Insofar as the glass door's transparency posed a possible danger (of bumping into it), plaintiff well knew from many visits that the door was there, and was or should have been as aware as defendant of its simple transparency as a possible problem. Thus defendant had no obligation to warn plaintiff on this score of what she should already have known, namely that there was a glass door whose transparency might allow one not paying attention to suppose it open when in fact closed.
Insofar as the door's non-safety glass posed a danger, defendant did not have an obligation to plaintiff to know of this danger.[1]
The homeowner's duty of reasonable care towards guests "includes the prior discovery of reasonably discoverable conditions of the premises that may be unreasonably dangerous, and correction thereof or a warning * * * of the danger"; Alexander v. General Acc. Fire & L. Assur. Corp., La.App.1957, 98 So.2d 730, 732, writ refused, quoted in Foggin, supra, 195 So.2d at 641. We see no basis for concluding that the homeowner should reasonably have discovered either (1) that his door was 3/16" thick and of non-safety plate glass rather than thicker or of safety glass, and therefore was unreasonably dangerous to anyone who walked through it, or (2) that some still unrevealed defect existed in the glass which made it unreasonably dangerous.

Prior Notice
The only prior notice was of one apparently slight bumping into the door at some unspecified time during the seven years defendant owned the house. This circumstance is utterly worthless as a "notice" to a homeowner that the door is dangerous. To the contrary, unless a homeowner had a method of excluding from his home everyone but "the reasonably prudent man" (or persons of identical prudence), the fact that only one person in seven years bumped into the door suggests it must have been relatively free of transparency-related danger.

Light Contrast
The darkened den (which must have had some light through the very door in question) may well, as the psychologist observed, have offered fewer and less no ticeable light reflections on the glass door interior, by which plaintiff's attention might have been awakened to the glass's presence.[2] But at most the interior darkness would heighten the transparency problem because of the lack of reflections. Again, we see no reason to hold it fault on defendant's part to fail to realize and warn against this danger without at the same time holding it fault on plaintiff's part. The danger being obvious to plaintiff, defendant had no duty to warn plaintiff.

*743 Telephone Location

Similarly, assuming without deciding that a telephone being situated very near the glass door constituted a danger, that would not have been significantly less obvious to plaintiff than to defendant, and defendant would have had no duty to warn plaintiff.

Decree
That part of the judgment appealed from dismissing all other defendants is affirmed; that part in plaintiffs' favor is reversed and there is now judgment in favor of Frank Natal and Phoenix Assurance Co. of New York dismissing the demand of Gordon Natal and Melanie Natal at their cost.
Affirmed in part, reversed in part.
NOTES
[1] Why the glass broke is not made clear by the evidence. An architect testified that quarter-inch non-safety, plate glass has an "impact quality" (breaking point?) of 30,000 pounds "pressure" not otherwise described (per point? per square inch or foot?) and therefore not relatable to the apparently slight weight of plaintiff. (E. g., if she weighed 100 pounds would she have to exert a force 300 times her weight to break quarter-inch plate?) Tempered glass's figure was "600,000 pounds of pressure, which means that it would disintegrate at those two comparative numbers, pounds pressure, which bears out the four to five and even six [sic] times greater impact quality of the [tempered] material."
[2] It was not shown that defendant turned off the lights in the den while a party was going on in the patio. Unless we would rule it negligence to have an electrical system which allowed den lights to be turned off independently of patio, we could probably in no case blame defendant for the den lights being off.