305 So.2d 438 (1974)
Gordon NATAL, Sr., Individually and on behalf of his minor daughter, Melanie Natal
v.
PHOENIX ASSURANCE CO. OF NEW YORK, Frank Natal, Craft Metal Products, Inc. and Lynn Mutual Insurance Co.
No. 54388.
Supreme Court of Louisiana.
December 2, 1974.
Rehearings Denied January 17, 1975.
*439 David Gertler, Owen J. Bradley, The Law Offices of Steven R. Plotkin, New Orleans, for plaintiff-applicant.
Wood Brown, III, Montgomery, Barnett, Brown & Read, New Orleans, for defendant-respondent.
BARHAM, Justice.
The plaintiff instituted suit for himself individually, and on behalf of his minor daughter, Melanie Natal, for damages for medical expenses incurred and personal injuries suffered when the daughter walked through a sliding glass door in the home of defendant, Frank Natal. The only defendants before this Court are the homeowner and his liability insurer. Originally, the builder of the house, the engineer who approved the house plans, and the manufacturer of the door were also made defendants, but suit has been dismissed against these three parties and they are not before this Court.
The trial court rendered judgment in favor of plaintiff and against the homeowner and the insurer, in solido. The Court of Appeal reversed the trial court in its award of damages against these two defendants. 286 So.2d 738 (La.App. 4th Cir. 1973). We granted writs of certiorari to review that judgment. 290 So.2d 329 (La. 1974).
The defendant, Frank Natal, and his wife were entertaining friends in their home; at the same time their children were entertaining friends which included Melanie, a fourteen-year-old cousin. Shortly after eight o'clock, some of the children, including Melanie, left the patio-swimming pool area and went upstairs to listen to records. To go inside and upstairs from the patio through the family room of the house, it was necessary to enter by a sliding glass door which separated the family room from the patio. This door consisted of a single sliding glass panel approximately six feet, ten inches high and three feet wide. The door panel was in an aluminum frame with a handle on one side about three and one-half feet from the floor. The glass panel was three-sixteenths of an inch in thickness. A similar, but immobile, glass panel was located to the right of the sliding door. Both were installed in casements. Prior to going upstairs the children had been swimming in the pool for a considerable time and had passed from the pool-patio area into the family room of the house several times during the afternoon and evening, but on each occasion the door between the areas was opened for Melanie.
Another child summoned Melanie from upstairs to answer a telephone call from her father. Melanie came downstairs into the family room. The lights in the family room had been turned off. The patio was well lighted. Melanie was walking at a slow pace as she approached the phone, which was situated on a low table out on the patio, just beyond the glass door. As she stepped to reach for the telephone, she bent slightly and in doing so, smashed the glass door, shattering the glass and causing the injuries for which recovery is sought.
Undoubtedly, Melanie knew that a glass door separated the patio from the family room. She of course knew that the door was at times closed in order to maintain the temperature in the air-conditioned interior of the house. However, during the day it often was open and as previously noted, Melanie never had to open the door in passing from the patio into the family room during the swimming activity.
Plaintiff urges several theories of responsibility for recovery from these defendants. Because of the peculiar facts of the case, we resolve the liability of the defendants *440 under La.Civil Code articles 2315 and 2316. We conclude that the defendant, Frank Natal, was negligent in maintaining this glass door in this particular location under the lighting arrangement existing at the time.
A homeowner is obligated to warn guests of hidden or concealed perils of which he knows, or should know in the exercise of reasonable care. Foggin v. General Guaranty Insurance Co., 250 La. 347, 195 So.2d 636 (1967).
Glass doors and panels which are clear and without any decoration create a transparency which, even under the best of circumstances, makes it difficult for one to observe the panel of glass. However, this ordinary situation of a totally transparent glass panel in a door was turned into what could be called a trap by the lighting condition which existed at the time that Milanie tried to reach for the phone. We quote from the trial court's finding:
"In this case there was an `illusion of space'; a bringing of the outside, inside; there was prior notice to the owner of the danger of the particular glass sliding door; there was the lighted patio and swimming pool and the darkened den; and there was the placing of the telephone in such a position as to cause an illusion that it was inside the den.
"It is the further opinion of the Court that Melanie Natal was not guilty of contributory negligence. That she was actually the victim of the negligence of Mr. Frank Natal, which was the proximate cause of the accident. Namely, maintaining a lighted patio and a darkened den, in an area of a sliding glass door which created an illusion of space and brought the outsideinside and to cap the climax; the placing of a telephone near the glass sliding door, where the effect would be to create an illusion that would bring the outside telephone inside the den. Naturally, the young girl leaned over to reach for the telephone and broke the 3/16 inch plate glass and was cut by the jutting pieces of glass.
"It is the opinion of the Court, that under the above circumstances, any ordinary prudent person would have re-acted in exactly the same manner in reaching for the telephone."
We believe the facts establish that the glass door created a deceptive illusion and was a trap by reason of the lighting conditions and absence of signs or markings on the door. The homeowner was negligent in failing to warn the minor child of the particular hazard created under these circumstances.
The trial court made no specific findings in its allocation of the award for pain and suffering and the appellate court of course did not pass upon the question of damages since it failed to find the defendant liable. We believe it will serve the best interest of all parties to remand the case to assess damages.
For the reasons assigned, the judgment of the Court of Appeal is reversed and the case is remanded to the Court of Appeal for an assessment of damages not inconsistent with the opinion rendered herein. Costs are cast against defendants.
SUMMERS, J., dissents for the reasons assigned.
SANDERS, C. J., and MARCUS, J., dissent for the reasons assigned by SUMMERS, J.
SUMMERS, Justice (dissenting).
Gordon Natal's home was the site of social activity on the evening of April 23, 1967. He and Mrs. Natal were entertaining a couple of their friends while the Natal children were entertaining their friends; included in this latter group was *441 Melanie Natal, a fourteen-year old cousin, who had been invited to the party. The elder Natals and their guests were seated in the patio near the swimming pool, while the children were swimming and barbecuing nearby.
Shortly after eight o'clock, some of the children left the patio and swimming pool to go upstairs into the house to listen to records. To go upstairs from the patio through the family room of the house it was necessary to enter by a glass sliding door separating the family room from the patio. This door consisted of a single glass panel approximately six feet ten inches high and six feet wide. The door panel was in an aluminum frame with a handle on one side about three and one-half feet from the floor. The glass panel was 3/16 of an inch in thickness. A similar, but immobile, glass panel was located to the right of the sliding door. Both were installed in casements.
While Melanie was upstairs, a younger child summoned her to the phone to answer a call from her father. In response to the call Melanie descended the stairs to the family room. The lights there had been turned off in contrast to the patio which was then well lighted. She approached the phone situated on a low table just beyond the glass door in the patio. As she stepped toward the phone she bent slightly in reaching for it. In doing so her head, arm and legs struck the panel of the closed sliding door, shattering the glass and causing the injuries for which recovery is sought.
During the course of this evening, and on many occasions prior to this time, Milanie had walked through the door providing access from the patio to the family room. She had often visited the Frank Natal family during the six years or more since he acquired the house. She referred to him as her uncle, although in fact her father was only his cousin. The house, with which she was familiar, also contained another glass door separating an upstairs bedroom from a sun deck.
It is not definitely ascertainable from the testimony whether on this night someone in the group with whom Melanie went from the patio to the upstairs closed the sliding glass door, or whether Melanie herself or some other person closed it. The testimony does make it quite clear, however, that Melanie and the Natal family were well aware of, and familiar with, the practice of closing the sliding glass door leading to the patio in order to maintain the temperature in the air conditioned interior of the house.
During more than six years no one had bumped into the glass door, except, on one occasion, when one of Natal's employees visited in his house and in his presence bumped into the closed door while talking and inattentive. This witness conceded that his actions in doing so were careless and stupid.
The principal thrust of plaintiffs' contention is that the defendant Natal was guilty of negligence in maintaining a glass sliding door in his residence. The theory of this contention is that where a glass door is maintained in such a location, separating the outside from the inside, and the inside is in a darkened room and at the same time the outside is well lighted, an illusion of space is created bringing the outside inside. Under these circumstances a person approaching the door from the interior of the darkened room does not see the glass panel. At the same time, objects just outside the glass panel will appear to be inside to a person approaching the panel from within the darkened room.
Issues involved are to be resolved under principles of fault liability announced in Articles 2315 and 2316 of the Civil Code. The vast majority of glass door cases are prosecuted on the basis of traditional theories of negligence. Major Legal Problem Glass Door Accidents, by Leon L. Wolfstone; 2 Am.Jur., Trial, No. 6, p. 25. *442 Louisiana's Courts have interpreted the principles embodied in Articles 2315 and 2316 to mean that the owner of premises is not the insurer of the safety of his invitee. Chauvin v. Atlas Insurance Co., 166 So.2d 581 (La.App. 1964); Daire v. Southern Farm Bureau Casualty Insurance Co., 143 So.2d 389 (La.App. 1962); Levert v. Travelers Indemnity Co., 140 So.2d 811 (La.App. 1962). He does not have to make the premises fool proof from all freak accidents. Allen v. Honeycutt, 171 So.2d 770 (La.App.1965), cert. denied, 247 La. 795, 174 So.2d 534 (1965)." . . . a lessee, occupier, or owner owes only to invitees upon his premises the reasonable care of providing a safe place for them upon the property." Cothern v. LaRocca, 255 La. 673, 232 So.2d 473 (1970). This rule applies to social guests as well as other invitees.
And the owner owes a duty to warn the invitee of the existence of hazardous conditions, but the duty to warn applies only to defects or hazardous conditions which are hidden or unobservable by the invitee. Fontenot v. Lewis Grocer Co., 458 F.2d 489 (5th Cir. 1972).
In applying these concepts the emphasis is whether, under the particular circumstances, there is a breach of the duty of reasonable care by the owner of the premises, Alexander v. General Accident Fire and Life Assurance Corp., 98 So.2d 730 (La.App. 1956), cert. denied, Comment, 27 La.L.Rev. 796 (1967); and there is no set norm to judge reasonable care or breach of duty.
The first requirement to maintain a suit against the premises' owner or occupier for an accident is to show that the accident has been caused by a hazardous condition. If the object or condition is not itself inherently or potentially hazardous there is no breach of duty. Joynes v. Valloft & Dreaux, Inc., 1 So.2d 108 (La.App.1941). The injury to the plaintiff invitee must, moreover, be foreseeable. Morel v. Franklin Stores Corp., 91 So.2d 42 (La.App. 1956). And the possibility of injury must not be too remote. Campbell v. All State Insurance Co., 112 So.2d 143 (La.App. 1959).
Upon these principles we cannot judge the homeowner liable for damages under these facts.
There is a distinction to be made, in my opinion, between the duty of care imposed upon a business establishment, where the public in general is invited to come upon the premises and where the owner or occupier of the premises uses them for commercial reasons in search of an economic benefit from the persons entering, and the duty of care imposed upon the owner or occupier of a residence. The occupier of a residence makes his premises available to a limited fewthose invited or licensed to enter for limited purposesusually social guests enjoying the hospitality of the occupier, or persons there to perform a service for the owner for which the owner pays and from which the licensee receives an economic benefit. The occupier of the residence should therefore not be required to exercise as high a degree of care in maintaining his residence as that imposed upon the operator of a commercial establishment. The negligence theory is for this reason of minimal value in residential injury cases due to the relatively narrow duty owed by an occupier to social invitees. 28 Am.Jur., Negligence, 92, et seq.
A review of the jurisprudence of this State fails to supply any decision imposing liability upon the owner or occupier of premises for maintaining a sliding glass panel door. In no case has such a door been considered to be an inherently or potentially hazardous object or condition. Wilson v. Allstate Insurance Co., 278 So.2d 814 (La.App. 1973); Tyler v. Jefferson Parish School Board, 258 So.2d 206 (La. App.1972); Williamson v. Travelers Ins. Co., 235 So.2d 600 (La.App.1970), cert. denied, 256 La. 818, 239 So.2d 345 (1970); Skyles v. State Farm Fire & Casualty Co., 210 So.2d 609 (La.App.1968), cert. denied, *443 252 La. 835. 214 So.2d 161 (1968); Sullivan v. Birmingham Fire Insurance Co., 185 So.2d 336 (La.App.1966), cert. denied, 249 La. 390, 186 So.2d 632 (1966); Bryant v. Ludendi Roller Dome Inc., 150 So.2d 55 (La.App.1963); Bauer v. Columbia Casualty Co., 126 So.2d 398 (La.App.1960).
Eight Louisiana cases have considered this problem. Three (Bauer, Sullivan and Natal) have decided that it is not actionable negligence or negligence per se for a defendant to have a glass panel, either a door or a window, like that maintained by defendant in this case. Each court's holding made the plaintiff's contributory negligence irrelevant.
Five of the cited cases (Bryant, Skyles, Williamson, Tyler and Wilson) have considered the issue of the injured party's contributory negligence, holding in each instance that collision with the glass panel was due to inattention or carelessness on the part of the party injured.
Another consideration which has influenced these decisions is expressed in Sullivan v. Birmingham Fire Insurance Co., 185 So.2d 336, 341 (La.App.1966):
"We are asked to hold that the door was a trap, a "hidden danger", obliging the church to place guards on it, or at least to give warning to all persons using the educational building. To so hold under the facts presented in this case would be to declare that simply to build or maintain such a door is negligence per se, and would make every home owner, church, school or business with similar installations a virtual insurer of those who run into or through such doors. We cannot so hold. To do so would convict of negligence many owners of new houses, churches and schools as well as the architects who designed the buildings."
Indoor-outdoor living, the "gracious and spacious" concept, and the desire for a view, have led to widespread use of transparent glass panels in residential construction. Neither the cases decided in this State nor the practical considerations of policy warrant the classification of glass doors as inherently or potentially hazardous as a general rule. Nothing about the glass door in the instant case removes it from the type generally in use.
The homeowner here had no notice of any kind that the glass door was dangerous or hazardous. Surely the one instance where the employee bumped into the door in an admittedly careless and stupid manner served no notice that the door created a hazard. The situation we believe is to the contrary. During almost seven years no member of the family, no guest, or anyone else, had experienced any injury because of the door. Indeed, even Melanie Natal, knowing the house as well as she did, had no unusual experience with the door until the unfortunate incident which gave rise to this suit.
Since nothing had occurred to alert the occupants of the Natal residence to warn their guest of a hazard related to the glass door, and, since Melanie was so familiar with the door and the conditions surrounding it, if a hazardous condition did exist it would be a redundant exercise to warn her. She knew as much, or nearly as much, as the defendant knew of the conditions surrounding the door due to her many visits.
The same reasoning applies to the claim that it was negligence to maintain the door with the lighting conditions peculiar to the time of the accident, and to the claim that it was negligence to locate the telephone near the door. These conditions were known to this young girl whose age, intelligence and alert faculties were adequate enough to make her realize whatever the defendant is charged with knowing.
I respectfully dissent.