STOULIG, Judge.
Plaintiff, Linda Morrison Ciaccio,[1] had appealed a judgment dismissing the suit she filed as tutrix of her minor son, Gene Morrison, Jr., for injuries he incurred when he ran into a plate glass side light window adjacent to a glass exit door in the Clear-view Medical Plaza. Also dismissed was her individual claim for expenses she incurred as a result of the accident. A jury found merit in her contention that the design of the doorway was negligent in that it created an illusion of open space and that this negligence was a proximate cause of the accident. However, the jury further found that plaintiff, Linda Ciaccio, was con-tributorily negligent, and in accordance with instructions given to it dismissed both claims.[2]
The record reflects that on July 6, 1972, Gene Morrison, Jr., aged 2, was being cared for by plaintiff’s younger sister Kathy while his mother was working. Kathy, accompanied by two friends, went to the Clearview Medical Plaza where all three ladies had an appointment to see a doctor with offices in that building. While Kathy was in the doctor’s examination room, Martha Blake, who had already been seen by the doctor, was watching young Gene in the reception area. After awhile, the child became restless and began activities that Mrs. Blake felt were disturbing to the others in the waiting room. Therefore, she, her 13-year-old son, and young Gene left the office. Mrs. Blake intended to wait for Kathy in her automobile. When the elevator stopped on the ground floor, Gene pulled away from her and ran without breaking his stride into the window or side light of plate glass adjacent to the exit door. He bounced back to the floor as broken glass showered over him.
The pivotal issue on negligence from plaintiff’s standpoint is whether the design of the glass exit and the adjoining glass sidelights extending from the floor to the ceiling[3] created the illusion that there was open space.
Architect Tilghman Chachere, Jr., an expert for plaintiff, said the window as designed was hazardous because there was no bar or decal or other safety device to apprise people using the building that the side light was a fixed glass obstruction rather than open air. He cited the following article of the 1970 Life Safety Code, a national publication available to architects, to fortify his conclusion the exit was negligently designed. We quote:
“Article 5-2112. Every exit doorway and every principal entrance which are required to serve as an exit shall be so designed and constructed that the way of exit travel is obvious and direct. Windows which because of their physical configuration or design and the materials used in their construction could be mistaken for doors shall be made inaccessible to the occupants by barriers or railings conforming to the requirements of 5-316.”
To rebut Chachere’s testimony, the defense called Murvan Maxwell, an architect who testified the design of the doorway and side lights met all building codes in effect when the medical center was erected. Although he was asked several times by defense counsel as to' safety of the design, he would not comment or give an opinion. On cross-examination plaintiff’s counsel elicited several suggestions from him that might have made the exit safer. Maxwell suggested some design or device to leave no *1388 visual doubt that the side light was in fact a fixed panel, for example using a material other than glass from the floor to a sufficient level to give the correct visual picture.
Defendants rely on compliance with existing building codes as exculpatory; however, this is not the only yardstick by which negligent design may be measured. At the time a 1952 parish building code was the standard with which architects had to comply to obtain a permit and this code is silent as to side lights. From the quoted regulation that Chachere cited, it is apparent that architects throughout the country were aware of a need to clearly delineate the fixed glass panels adjacent to doorways to prevent the type of accident that we are concerned with in this case.
One of the tenants of this medical center is a pediatrician; therefore it is even more reasonable to require the lessor to maintain a building that is safe for small children. When young Gene ran from the elevator, the fact that he never slowed or broke his stride demonstrates that the side light appeared to be open space. As the Supreme Court pointed out in Natal v. Phoenix Assurance Co. of New York, 305 So.2d 438, 440 (1974): “Glass doors and panels which are clear and without any decoration create a transparency which, even under the best of circumstances, makes it difficult for one to observe the panel of glass.”
The record fully supports the jury finding of actionable negligence upon the part of defendants, however, there is no basis for denying recovery to plaintiff on either the individual demand for special damages or the claim on behalf of her minor child for general damages.
The trial court properly informed the jury that a child of Gene’s young years could not be held to be contributorily negligent and we do not think this principle is in dispute because the defendants’ pleading concedes a child younger than seven years cannot be guilty of contributory negligence. Perry v. Herrin, 215 So.2d 167 (La.App. 3d Cir. 1968), points out that a nonnegligent minor may not be deprived of an award of general damages if it is found that the parent is guilty of contributory negligence. Thus, the jury’s denial of the minor’s claim was based on improper instruction that if they found the mother contributorily negligent, they should return a verdict for the defendants.
As to Linda Morrison, defendants failed to prove that she was contributorily negligent. In order that she could support herself and her child, she left young Gene with her sister who was almost 17. At the time of the accident, Martha Ann Blake, accompanied by her teen-age son, was taking young Gene to the automobile when he broke loose from her grip. Gene was entrusted to the care of a mature woman with children of her own at the time of the accident and we find no negligence on the part of his mother. Therefore we reverse the jury finding of contributory negligence.
We next consider quantum. Young Gene suffered facial scarring, the most prominent one appearing on his right cheek. There is another scar on his forehead into the hairline and a minimal scar on the nose. The blow caused a deviated septum which required surgery and four days’ hospitalization. The surgery was not performed until June 1975, almost three years after the accident and Dr. Gertrude Waite, the plastic surgeon, testified she is reluctant to operate on children unless there is an immediate need. Because Gene experienced an increased difficulty in breathing, the surgery was performed. Whether further surgery will be required is not determinable at the present time.
Immediately after the accident Gene was taken to the office of a Dr. Hebert (the doctor Kathy and Mrs. Blake had visited), who sutured the facial cut and when plaintiff arrived, she decided more medical attention was required. However before rushing off to Ochsner Emergency Room, she contacted her attorney. While her priorities are questionable, there is no doubt the child was injured.
As general damages we award $5,000 to Linda Morrison Ciaccio for the benefit of *1389 her son Gene and award $1,282.05 to Linda Morrison Ciaccio individually as special damages for the medical expenditures she made on her child’s behalf.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment in favor of plaintiff, Linda Morrison Ciaccio, individually, in the sum of $1,282.05 and in the sum of $5,000 for the use and benefit of her minor son, Gene Morrison, Jr., and against defendants, Clearview Medical Plaza; William J. Hogan; L. Dow Oliver; Ralph D. Dwyer, Jr.; and American Motorist Insurance Company, jointly, severally and soli-darily with legal interest from judicial demand. It is further ordered that an expert fee be awarded to Tilghman Cachere of $75 and a fee of $250 be awarded Dr. Gertrude Waite. Defendants are to pay all costs and expert fees.

REVERSED AND RENDERED.

. Plaintiff remarried after this suit was filed.

. Interrogatory No. 3 propounded to the jury stated: “Was plaintiff, Linda Morrison, con-tributorily negligent and did this contributory negligence constitute a proximate cause of the accident? * * * If your answer is ‘yes’ you will return a verdict in favor of the defendant.”

.The glass measurements of the doorway are 36 inches by 82 inches, while the side light measures 23 inches by 82 inches.